No. 48,113

RICHARD WALKER, *Appellant,* v. BERNARD F. IRETON and MARJORIE J. IRETON, *Appellees.*

(559 P. 2d 340)

Opinion filed January 22, 1977.

*Robert L. Marietta,* of Marietta and Kellogg, of Salina, argued the cause, and was on the brief for the appellant.

*Philip Shaffer,* of Norton, Shaffer and Wasserman, of Salina, argued the cause, and was on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an action for the specific performance of an oral contract for the sale of farm land. The defendants answered asserting the defense of the statute of frauds. The plaintiff-appellant is Richard Walker who will be referred to in this opinion as Walker or plaintiff. The defendants-appellees are Bernard F. Ireton and his wife, Marjorie J. Ireton. Mrs. Ireton was not directly involved in the transactions between her husband and Walker. In this action we will refer to the defendant, Bernard F. Ireton, as defendant or Ireton. The district court conducted an extensive pretrial conference, following which a pretrial order was prepared summarizing the pleadings and setting forth stipulations of the parties and the plaintiff's contentions. The defendants then filed a motion for summary judgment on the ground that plaintiff was not entitled to specific performance as a matter of law because of the application of the statute of frauds. The trial court sustained the defendants' motion for summary judgment and the plaintiff has appealed.

For the purpose of determining this appeal we will assume as true the stipulations of the parties, the factual contentions of the plaintiff, and the factual allegations set forth in the affidavit of plaintiff which was filed in response to the motion for summary judgment. Furthermore, in construing the facts we will adopt all reasonable inferences in support of Mr. Walker's position. The factual circumstances are not really in dispute and are essentially as follows: Sometime during the month of July 1973 Walker and Bernard Ireton commenced negotiations for the purchase of the Ireton farm which consisted of 160 acres in Saline county. Prior to this time Walker had only a speaking acquaintance with Bernard Ireton and did not know Mrs. Ireton. In response to a call from Ireton, Walker went to the Ireton farm where he was told that Ireton would sell the farm for $30,000. About a week later Walker advised Ireton that he would accept the proposal for sale at a price of $30,000. Ireton was to farm the crop land on shares and was to pay the real estate taxes through the year 1973. Agreements were made in regard to preparing and seeding the ground for alfalfa and for the cutting and storage of the prairie hay in the pasture. Walker

was to be permitted to spray the trees in the pasture to kill them. It was agreed that Walker was to receive full possession of the farm in January 1974. Both Mr. and Mrs. Ireton agreed to the terms of the sale. The preparation of a written contract was discussed and it was agreed that one was to be executed. Ireton stated that he wanted to wait until he could see his tax man to find out how to take the money before preparing a written agreement. A week or so later Ireton stated to Walker that he had sold the farm too cheap but was not going to back out of the agreement. Ireton asked for another $500 on the purchase price to compensate him for alfalfa and because he intended to leave the air conditioner, drapes, and carpet in the house. Walker agreed to an increased sale price of $30,500. The purchase price was to be paid as follows: $50 on July 30, 1973; $7,612.50 on or before September 30, 1973; and $22,-837.50 on or before January 1, 1974. The Iretons were to continue to live in the house until January 1, 1974, when Walker was to take complete possession. Mr. and Mrs. Ireton approved the terms of the sale and Walker again suggested that a written contract be prepared. Ireton stated that his word was good and it would be prepared later. Ireton advised Walker of a broken lateral in the septic system and suggested that Walker make arrangements to connect onto the rural water system. Walker also agreed to buy the range in the house for $25. On July 30, 1973, Walker delivered his $50 check to Ireton. This check was never endorsed or cashed. On at least four subsequent occasions thereafter Walker attempted to convince Ireton that a written contract was needed to complete the agreement. At one time Walker took a written contract to the Iretons to be signed. On each occasion Ireton said that a written contract was not needed since he was honest. A written contract was never executed.

In August of 1973 Walker obtained the abstract of title to the property from Mrs. Ireton. Walker had it brought up to date and examined by his attorney at a cost of $36 for extension of the abstract and a $75 attorney fee for its examination. These sums were apparently paid by Walker. In September 1973 Walker took a hay rake to the property and left it in the pasture. Thereafter further differences began to occur. Ireton told Walker that their new home then being constructed would not be completed by January 1, 1974. Walker agreed that the Iretons should remain in possession until a later date after the house was completed. In late August 1973 Ireton offered Walker $200 to cancel the agreement.

Walker declined the offer saying that at that time he had no other place to go. It should be noted that Walker planned to utilize the property as a home and place to breed and train thoroughbred horses. Prior to negotiating with Ireton, Walker had purchased another farm on contract but the Iretons' farm was larger and better situated for Walker's purposes. After making the oral contract with the Iretons, Walker sold the other farm because he could not afford two farms.

Sometime during this period Walker saw Mrs. Ireton and asked why they had not cashed the $50 check which was given as a down payment. Mrs. Ireton said there was no hurry and that her husband had some funny ideas and she had to go along with them. Walker sent a man out to plant some alfalfa and Ireton sent the man away saying that he, Ireton, did not then have time to plant it and he would call him when he had time. On September 28, 1973, Walker tendered Ireton a check for $7,612.50, that sum being the second installment under the oral contract. At this time Ireton refused the payment and said that he was backing out of the oral agreement. Ireton said that he supposed Walker would have him in court. Ireton offered Walker the $50 check which had been received in July and Walker refused to take the check back. After this Walker offered the check to Mrs. Ireton which she refused but said she would pay the abstract expense and damages. Subsequently Walker was evicted from premises which he had leased for breeding and training his horses. In September 1974 Walker filed this action for specific performance.

At the pretrial conference the parties agreed to be bound by certain factual stipulations. It was agreed that the $50 check delivered by Walker to Ireton dated July 30, 1973, was not signed by the defendants; that Walker incurred an expense of $36 for bringing the abstract up to date; that Ireton did not accept or sign the check which was tendered by Walker on September 28, 1973; that a short time after September 28, 1973, Ireton offered to pay the abstract expense and "damned little damages" or words to that effect. The parties further stipulated that there was no writing or memorandum of any kind purporting to be an agreement or contract signed by either of the parties; that the Iretons had never delivered complete possession of the property to Walker; and that Walker had made no permanent improvements on the property. The parties from the beginning contemplated that a written agreement was to be prepared later covering all of the various oral agree-

ments of the parties pertaining to the agreed purchase price; delivery of possession; Walker's right to mow, bale, and store prairie hay and to spray trees; storage of crops; and the division of wheat.

As stated above the Iretons based their motion for summary judgment on the ground that the oral contract was not enforceable because of the statute of frauds (K. S. A. 33-106) which provides in substance that no action shall be brought to charge a party upon any contract for the sale of lands "unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, . . ." The trial court sustained the Iretons' motion for summary judgment dictating into the record findings of fact and conclusions of law. In ruling on the motion the trial court accepted the plaintiff's factual contentions as true. For purposes of summary judgment the trial court took as established the plaintiff's contention that there was an oral agreement for the sale in accordance with the terms suggested by plaintiff. The court then considered Walker's contention that the statute of frauds was not available as a defense on the basis of partial performance, fraud, waiver, estoppel or ratification. The trial court concluded that there were not sufficient equities in the case to justify the court in taking the case out of the statute of frauds. The trial court found that this was a classic case of an oral contract for the sale of land, and because of the statute of frauds the oral contract was not enforceable. Following the trial court's order sustaining the Iretons' motion for summary judgment, Walker appealed to this court.

On this appeal Walker has asserted ten points of claimed error which involve two basic issues: (1) Was summary judgment prematurely granted because there were genuine issues of material fact undetermined at the time the summary judgment was entered; and (2) did the trial court err in refusing to take the case out of the application of the statute of frauds because of equitable considerations. In this opinion we will discuss these issues so as to include all of the various points raised on the appeal.

On the entire record before us we have concluded that the case was ripe for summary judgment. The trial court in granting summary judgment accepted as true all stipulations of the parties and Walker's factual contentions. Since the court proceeded on this basis, it cannot be said that there were genuine issues of material fact undetermined which precluded the entry of summary judgment. The plaintiff Walker had a full opportunity to file his

affidavit in opposition to the Iretons' motion and to present at the pretrial conference his contentions as to what the facts of the case were from his point of view. He did not suggest to the trial court nor does he suggest on this appeal that there are other pertinent facts which the trial court should have considered in passing on the motion for summary judgment. Under the circumstances the motion for summary judgment presented a clear-cut question of law for determination: Did the equities of the case require the trial court to remove the statute of frauds as a defense to the action for specific performance of the oral contract?

We turn now to a consideration of the vital issue in the case, whether equitable considerations prevented the statute of frauds from being asserted as a defense to the action on the oral contract. Counsel for Walker takes the position that the statute of frauds should be held to be inapplicable as a mater of law on alternative theories of fraud, estoppel, acquiescence, waiver, ratification, inconsistency in conduct, or partial performance. In his brief counsel for Walker has cited a number of Kansas decisions which have approached this statute of frauds question from these various angles, using different terminology in particular cases.

In determining this case it would be helpful to consider some of the basic principles of law which have been applied in our cases involving oral contracts for sale of land where the statute of frauds was asserted as a defense. Literally applied K. S. A. 33-106 bars any action on an oral contract for the sale of land. Shortly after the original statute of frauds was enacted in England, courts of equity refused to apply the statute in certain cases where the purchaser under the contract in reliance upon the oral agreement performed acts required by the contract to such an extent as to make it grossly unjust and inequitable for a court of equity to refuse to enforce the oral agreement. Throughout our judicial history the courts of Kansas have enforced oral contracts for the sale of land because of equitable considerations in many cases. In 1872 in *Edwards v. Fry*, 9 Kan. 417, Justice Brewer upheld the specific performance of an oral contract for the sale of land where a vendee in possession of the land paid a portion of the purchase price and made valuable and lasting improvements on the land. In the course of the opinion Justice Brewer relied in part on the rule that a party who has permitted another to perform acts on the faith of an agreement, shall not insist that the agreement is bad, and that he is entitled to treat those acts as if it had never

existed. From the beginning the basis for removal of a case from application of the statute of frauds has been the reliance by one of the parties to the oral contract to his detriment under circumstances where gross injustice would result unless the oral contract was enforced. In *Baldridge v. Centgraf*, 82 Kan. 240, 108 Pac. 83, this court again emphasized reliance as the basis for relief from a strict application of the statute of frauds in the following language:

"The ground upon which a court, notwithstanding the statute of frauds, may compel the complete performance of an oral contract for the sale of real estate, which has been partly performed, is that such a decree may be necessary in order to avoid injustice toward one who in reliance upon the agreement has so altered his position that he can not otherwise be afforded adequate relief." (Syl. 1.)

In other cases this court in dealing with oral contracts within the statute of frauds has applied the following principles of law:

(1) The statute of frauds does not render the oral contract void. It is valid for all purposes except that of suit. (*Weld v. Weld*, 71 Kan. 622, 81 Pac. 183; *Rice v. Randolph*, 111 Kan. 73, 206 Pac. 314.)

(2) Since the contract is one which cannot be enforced, no action for damages will lie for its breach. (*Fry v. Platt*, 32 Kan. 62, 3 Pac. 781; *Leis v. Potter*, 68 Kan. 117, 121, 74 Pac. 622; *Evans v. Lynch*, 200 Kan. 331, 436 P. 2d 867.)

(3) The statute of frauds was enacted to prevent fraud and injustice, not to foster or encourage it, and courts will, so far as possible, refuse to allow it to be used as a shield to protect fraud and as a means to enable one to take advantage of his own wrong. (*Hazen v. Garey*, 168 Kan. 349, 212 P. 2d 288; *Powell v. McChesney*, 170 Kan. 692, 228 P. 2d 925.)

(4) Where it is sought to enforce an oral contract for the sale of an interest in real estate on the grounds that it has been performed by the party seeking to enforce it, it must appear that a failure to enforce would amount to a fraud against the party. (*Jay v. Ellis*, 135 Kan. 272, 10 P. 2d 840.)

(5) Absent compelling equitable considerations an oral contract within the statute of frauds will not be specifically enforced. (*Engelbrecht v. Herrington*, 103 Kan. 21, 172 Pac. 715; *Jay v. Ellis*, supra.)

(6) Part performance of an oral contract will not take the case out of statute where the performing party can be compensated in

money. (*Gates v. Syndicate Oil Corp.*, 132 Kan. 272, 295 Pac. 649; *Engelbrecht v. Herrington,* supra.)

(7) Payment of the purchase price alone is not sufficient part performance to take a case out of the statute of frauds. Since the money can be recovered back by action, no fraud will be accomplished if the oral contract is not enforced. (*Edwards v. Fry,* supra; *Engelbrecht v. Herrington,* supra; *Riffel v. Dieter,* 159 Kan. 628, 157 P. 2d 831.)

(8) Delivery of possession of the land alone without the making of improvements is not sufficient to take a case out of the application of the statute of frauds. (*Baldridge v. Centgraf,* supra.)

In dealing with statute of frauds cases courts throughout the country have often shifted their approach to the problem from a theory of part performance, to one of fraud, to one of estoppel. Because of this confusion in the cases the American Law Institute in 1973 adopted a tentative draft to the Restatement 2d, Contracts, to clarify the legal principle and to make it more understandable. Specifically, we note §§ 197 and 217A of the Restatement 2d, Contracts (Tentative draft 1973), which provide as follows:

"§ 197. ACTION IN RELIANCE; SPECIFIC PERFORMANCE. A contract for the transfer of an interest in land may be specifically enforced notwithstanding failure to comply with the Statute of Frauds if it is established that the party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific enforcement."

"§ 217A. ENFORCEMENT BY VIRTUE OF ACTION IN RELIANCE.

"(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.

"(2) In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are influential:

"(a) the availability and adequacy of other remedies, particularly cancellation and restitution;

"(b) the definite and substantial character of the action or forbearance in relation to the remedy sought;

"(c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;

"(d) the reasonableness of the action or forbearance and the misleading character of the promise."

We have not specifically mentioned or approved §§ 197 and 217A

in our prior decisions. We have, however, recognized and applied in other cases a similar provision found in § 90 in the Restatement, Contracts, which sets forth the doctrine of "promissory estoppel." (*Southwestern College v. Hawley*, 144 Kan. 652, 62 P. 2d 850; *Greiner v. Greiner*, 131 Kan. 760, 293 Pac. 759; *Marker v. Preferred Fire Ins. Co.*, 211 Kan. 427, 506 P. 2d 1163; *Kirkpatrick v. Seneca National Bank*, 213 Kan. 61, 515 P. 2d 781.) In our judgment sections 197 and 217A of Restatement 2d, Contracts (Tentative draft 1973), are clear and direct statements of the principles of law to be applied in determining whether or not an oral contract should be removed from the application of the statute of frauds and enforced by a court on equitable principles. They are based upon the equitable doctrine of reliance which is the fundamental theory upon which all of our prior cases are founded.

In determining the result in this case we will apply these sections to the factual situation in the record now before us. We have concluded that under all the facts and circumstances equity does not require the statute of frauds to be removed as a defense to this action for specific performance of the oral contract. Here there is no claim that there was any relationship of trust or confidence between the parties. There are no allegations or evidence of false misrepresentation of existing facts. The worst which can be said is that Ireton repeatedly promised that he would perform the oral contract and that he would enter into a written contract to evidence the same. It was stipulated that the parties understood a written contract was to be prepared. Ireton simply refused to sign a written contract on four or five different occasions. Although Walker made a $50 down payment he never took possession of the land involved and made no improvements thereon. Walker placed a hay rake on one of the pastures of the farm but this could not be considered a delivery of possession of the land.

The acts of reliance which Walker has asserted are limited by the record to delivery of the $50 check as an installment on the purchase price, payment of a $36 abstract expense and a $75 attorney fee for an abstract examination, the placing of a side-delivery hay rake on a pasture in September 1973, and the fact that Walker sold a farm near Hedville which he had recently purchased in reliance on Ireton's promise to sell his farm. The question is whether or not these acts of reliance are sufficient to require a court to remove the bar of the statute of frauds. We have concluded that taken together they are not sufficient to justify specific performance

of the oral contract. The fact that Walker sold another farm in expectation that the Iretons would sell their farm to him does not justify specific performance under the circumstances of the case. As a general rule an act which is purely collateral to an oral contract, although done in reliance on such contract is not such a part performance as to authorize the enforcement of the contract by a court of equity. (81 C. J. S. Specific Performance, § 54; *Jones. v. Linder,* [Mo. 1952] 247 S. W. 2d 817.) An exception is recognized, however, where the agreement was made to induce the collateral act or where the collateral act was contemplated by the parties as a part of the entire transaction. (*McKinley v. Wilson,* [Tex. Civ. App. 1906] 96 S. W. 112.)

In the present case the plaintiff Walker does not contend that he advised the Iretons of his intention to sell the Hedville farm in advance of the sale or that the Iretons had any knowledge concerning the sale of the Hedville farm until after it had already been sold. Furthermore, Walker does not contend at any place in the record that he lost money on the resale of the Hedville farm to others. We consider the resale of the Hedville farm by Walker to others as a matter wholly collateral to the Ireton contract and not within the contemplation of the parties nor within the scope of any understanding between Ireton and Walker. In support of this position is *Dunn v. Winans,* 106 Kan. 80, 186 Pac. 748. There plaintiff vendee brought an action for specific performance of an oral agreement to sell certain land. The petition alleged the making of some improvements on the property and further alleged that plaintiff was damaged in the amount of $300 for the sale of his home for the purpose of carrying out the contract with the defendant. This court denied specific performance holding that there had not been sufficient part performance to take the case out of the statute of frauds. The court further held that although specific performance was denied, the vendee was entitled to recover the expenses which were incurred by him for the improvements he made on the property. He was not, however, permitted to recover damages on account of the sale of his former home. Walker is entitled to the return of his $50 check and the cost of bringing Iretons' abstract up to date on the basis of *quantum meruit* or unjust enrichment. These expenditures were of benefit to the Iretons and Walker is entitled to restitution for these items. Walker is not, however, entitled to be reimbursed for his $75 attorney fee in

obtaining a legal opinion. The Iretons received no benefit from this expenditure.

Where a vendee is denied specific performance under an oral contract for the sale of land his right to restitution is restricted to expenditures or services which benefitted the vendor on the basis of *quantum meruit*. (37 C. J. S. Statute of Frauds, § 255; Restatement, Contracts, § 355; *Heine v. First Trust Co.*, 141 Kan. 370, 41 P. 2d 767; *Sinclair Refining Co. v. Vaughn*, 135 Kan. 82, 9 P. 2d 995 [consideration paid]; *Nelson v. Street*, 148 Kan. 587, 83 P. 2d 793 [services rendered]; *Dunn v. Winans*, supra [improvements on the property].)

Comment *b* under 217A states that the reliance of the promisee must be foreseeable by the promisor and enforcement must be necessary to avoid injustice. In this case equity and justice do not require specific enforcement of the oral contract, nor do they require reimbursement to Walker for the sale of the Hedville farm.

The judgment of the district court is affirmed.