No. 49,173

PROGRESS ENTERPRISES, INC., a Kansas Corporation, *Appellant,*
v. THE LITWIN CORPORATION, a Kansas Corporation, *Appellee.*

(589 P.2d 583)

Opinion filed January 20, 1979.

*James W. Sargent,* of Sargent, Klenda, and Glickman, of Wichita, argued the cause, and *Alexander B. Mitchell, II,* and *Marc A. Salle,* of the same firm, were with him on the brief for the appellant.

*Thomas D. Kitch,* of Fleeson, Gooing, Coulson, and Kitch, of Wichita, argued the cause, and *Dale M. Stucky,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an action seeking specific performance of an oral sublease of the Beacon Building in Wichita or, in the alternative, to recover damages for breach of the sublease. The trial court granted summary judgment to the defendant on the ground that the plaintiff's action was barred as a matter of law by the statute of frauds (K.S.A. 33-106). The plaintiff-appellant is Progress Enterprises, Inc., a corporation formed for the primary purpose of operating the Beacon Building. It is the lessee of the Beacon Building under a written lease from the city of Wichita. In this opinion we will refer to the plaintiff as PEI. The defendant-appellee is Litwin Corporation, a wholly owned subsidiary of Amtel Corporation, which has its principal offices in Houston, Texas. The evidentiary record upon which the summary judgment was based included the depositions of Vann V. Jones and Thomas Kinkaid, who represented PEI during the lease negotiations with Litwin and the depositions of Willis Alexander, H. Fred Levine, and Thomas Taylor, who were representatives of Litwin Corporation. In addition, the trial court had before it all of the correspondence and written memoranda prepared by the parties during the course of the negotiations. A review of this case

on appeal has been difficult because the trial court failed to make any findings of fact or conclusions of law in disposing of the case by summary judgment.

Where a trial court considers a motion for summary judgment, the movant's adversary is entitled to the benefit of all reasonable inferences that may be drawn from the facts under consideration. *Pedi Bares, Inc. v. First National Bank,* 223 Kan. 477, 481, 575 P.2d 507 (1978). A trial court should not determine factual issues on a motion for summary judgment but should search the record for the purpose of determining whether factual issues do exist. Only if reasonable persons could reach but one conclusion from the same evidence may the trial court decide the issue as one of law. The trial court's decision granting summary judgment must be reviewed with these rules in mind. We have, therefore, considered the facts in a light most favorable to PEI, giving PEI the benefit of any reasonable inference that could be drawn from the facts under consideration.

It is undisputed that PEI and Litwin began negotiations for a lease of the Beacon Building at PEI's request in May of 1974. Before reviewing the negotiations between the two parties, it is necessary to examine the situation as it existed prior to the negotiations. The Beacon Building, a ten-story office building in downtown Wichita, was constructed in 1910. Between 1958 and 1971, Equitable Life Assurance Society held the mortgage on the building in the amount of $850,000. Equitable took title to the building in 1971, after two successive companies specializing in real. estate investments had been unable to generate enough income from the building to make the mortgage payments. In 1972 Equitable tried but was unable to sell the Beacon Building for a reasonable price. PEI was formed in the latter part of 1972 for the primary purpose of dealing with the Beacon Building. It became the lessee of the building under a written lease from the city of Wichita. The idea to form PEI came from the head of the Department of Economic Development of the city of Wichita who was concerned with the high vacancy rate in office buildings in downtown Wichita. In July of 1973, the city of Wichita acquired title to the Beacon Building through a revenue bond offering which was purchased by Equitable. The proceeds of the original bond issue were to be used to purchase the building and to make extensive repairs and improvements. PEI was an un-

dercapitalized, minority controlled corporation. PEI originally planned to remodel the building on a floor-by-floor basis in order to keep its present occupants and attract new ones. In March of 1974, PEI learned that the Litwin Corporation was looking for consolidated office space where it might combine all of its Wichita offices into a single office area.

On May 24, 1974, PEI and Litwin began negotiations for a sublease of the Beacon Building by Litwin. In all of these negotiations, PEI was represented by its principal officer, Vann Jones, a real estate broker and certified property manager, and by his partner, Tom Kinkaid. Litwin was represented by Willis H. Alexander, its vice-president and technical director. At that time, Litwin was also interested in leasing the Fourth National Bank Building but the owner of that building was looking for a purchaser and Litwin only desired to lease office space. Negotiations between Vann Jones and Willis H. Alexander continued until April of 1975. At that time Litwin concluded that a mutually satisfactory leasing arrangement of the Beacon Building could not be consummated. Litwin then entered into a lease of the Fourth National Bank Building. PEI then brought this action for specific performance to compel Litwin to lease the Beacon Building. Following the filing of the action, the parties took the depositions of all persons who had any knowledge about the negotiations. The correspondence and written memoranda of the parties were made a matter of record before the court. Discovery having been completed, Litwin filed a motion for summary judgment on the basis that the plaintiff's cause of action was barred by the statute of frauds since the action was based on an oral lease which exceeded one year in duration.

Both PEI and Litwin are in complete agreement that the statute of frauds (K.S.A. 33-106) is applicable to the claimed ten-year oral lease involved in this case. A lease of real estate exceeding one year in duration is required to be in writing under the provisions of K.S.A. 33-105. Both PEI and Litwin rely upon *Clark v. Larkin,* 172 Kan. 284, 239 P.2d 970 (1952), which sets out the formal requirements which a memorandum must contain in order to be enforceable under the statute of frauds. Syllabus ¶ 2 of *Clark* states as follows:

"A memorandum, in order to be enforceable under the statute of frauds, may be any document or writing, formal or informal, signed by the party to be charged or

by his lawfully authorized agent, which states with reasonable certainty (*a*) each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent, (*b*) the land or other subject matter to which the contract relates, and (*c*) the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made."

As applied to lease agreements, the principles of law relating to the sufficiency of a memorandum to satisfy the statute of frauds are discussed in 72 Am. Jur. 2d, Statute of Frauds § 341, pp. 865-866 in the following language:

"The general rule is well established, without dissent, that a memorandum of agreement for a lease, in order to satisfy the statute of frauds, must contain all of the essential and material terms and conditions of a valid lease. Thus, the memorandum relied on to establish a lease agreement must embody all the essential and material parts of the lease contemplated to be thereafter executed with such clarity and certainty as to show that the minds of the parties had met on all material terms and with no material matter left for future agreement or negotiation. But while the courts are agreed as to the general rule itself, the results of the application of the rule are not completely harmonious. This arises partly from the different fact situations, and the different language used in the writings, in the particular cases, and from a difference of opinion as to what are 'the essential terms and conditions' of a lease agreement, although most courts evidently limit such essentials—in addition to a definite agreement as to the extent and boundary of the property to be leased—to a definite and agreed term, including a defining of the beginning of the term, and to a definite and agreed rental and time and manner of its payment. And it should be particularly noted that although a memorandum may satisfy the statute by setting out with sufficient clarity all essential terms of a valid lease, if it goes further and shows that some other term or condition material to the lease, though not essential to a valid lease, has not been fully agreed upon by the parties but has been left for further negotiation or agreement, such additional matter may thereby render the memorandum insufficient under the statute.

"In a number of cases involving widely varying language used in the writings, the courts, in applying the above general rule, have held a single writing, multiple writings, or correspondence, evidencing an agreement for a lease, sufficient and complete enough as a memorandum to satisfy the statute of frauds. In other cases particular memoranda constituting the lease agreement have been held insufficient to satisfy the statute, in some cases on the ground that the term, or the beginning of the term, of the letting or demise was not shown, in others on the ground that the amount of rent or the time and manner of its payment were not shown, and in still others on the ground that other terms and conditions were not shown."

There is a comprehensive annotation on the subject in 16 A.L.R.2d 621, where cases are cited from many jurisdictions involving a variety of factual situations where particular memo-

randa have been held sufficient and insufficient to satisfy the statute of frauds. In this case the trial court, in determining Litwin's motion for summary judgment, was required to examine all of the written memoranda set forth in the record and determine whether or not those memoranda were sufficient to satisfy the requirements of the statute of frauds. It is the position of PEI that the written memoranda of the negotiations were sufficient. It is the position of Litwin that they were not sufficient. Simply stated, Litwin maintains that, as a matter of law, the written memoranda contained in the record show that PEI and Litwin never had a meeting of the minds, since there were essential terms and conditions of the proposed lease agreement which had not been finally determined and which were subject to further negotiations. Specifically, Litwin contends that agreement by the parties was never reached, since PEI was never able to find financing for the cost of remodeling or to establish a rental rate which was within Litwin's budget.

We have concluded, on the basis of the evidentiary record before us, that the trial court properly granted summary judgment under the facts and circumstances in this case. It is clear to us that all of the written memoranda relied upon by PEI establish only that there were continuing negotiations between PEI and Litwin for a sublease of the Beacon Building and that they do not show that any final agreement or meeting of the minds between PEI and Litwin ever existed. PEI in its brief relies upon five written documents which PEI contends are sufficient to satisfy the statute of frauds. We will consider them individually and collectively. The first memorandum is an interoffice memo from W. H. Alexander to Fred Levine, President of Litwin Corporation, dated August 14, 1974. In this memo Alexander suggested an additional clause in the proposed sublease obligating Litwin to renew the lease assuming that at the end of the ten-year lease Litwin operations earned a certain profit and that there existed an engineering backlog of a certain amount. There is a comment in regard to Equitable's possible commitment to buy the additional bonds and the possibility that Mr. Jones might find other buyers for the additional parity bonds. The memo discusses a "proposed lease agreement." It is obvious that this letter does not establish the terms and conditions of a completed contract. It is concerned solely with the negotiations then in progress.

PEI next relies on a letter of September 4, 1974, from Alexander to Coy Eklund, President of Equitable Life Assurance Company. This letter begins with the following language:

"The Litwin Corporation *is negotiating* with Progress Enterprises, Inc. for a lease on a building known as the Beacon Building in Wichita, Kansas." (Emphasis supplied.)

The letter then states that, assuming that these negotiations are satisfactorily concluded and Progress Enterprises, Inc., is successful in obtaining the necessary additional funding by way of parity bonds being issued by the city, and all details are worked out with the city, it is expected the lease would be for a term of ten years with a ten-year renewal option. The letter further states that the lease would be contingent upon adequate parking facilities being available on a mutually satisfactory basis. This letter shows only continuing negotiations and that certain conditions must be met before Litwin would execute a lease with PEI for the Beacon Building.

PEI next relies upon a letter dated September 16, 1974, from Alexander to J. Ottmar, President of Amtel, Litwin's parent corporation. Enclosed in the letter were two copies of an overview of the "commitments anticipated if Litwin were to lease the Beacon Building for the Wichita office." The letter further states that no definitive answer has been received from Equitable as to their willingness to purchase the parity bond issue. The letter by its very terms discusses a *proposed* sublease agreement, not a final agreement between PEI and Litwin.

PEI next relies on an unsigned sublease agreement which was prepared by Litwin's attorneys and delivered to PEI on or about September 18, 1974. This proposed sublease agreement is not dated and contains a number of blanks for essential terms which would have to be determined before a binding sublease could be entered into. The document itself indicates that the total amount of monthly rent to be paid is undetermined at this time and would have to be agreed to later when the lessor's monthly rent service requirements of principal and interest become known. This document also contains a further statement that this sublease and the obligation of the parties· are contingent upon the parity bonds being issued and *sold.* It cannot reasonably be claimed that all conditions and essential terms of a sublease have been determined and agreed upon between PEI and Litwin.

Finally, PEI relies upon a lengthy review letter sent by Alexander of Litwin to Jones of PEI on January 31, 1975. The stated purpose of the letter is to review developments on Litwin's program to acquire office space in a single building in the downtown area of Wichita. This letter clearly shows that the basic problem in the negotiations was for PEI to find a buyer for the parity bonds on a basis which would be compatible with the overall cost limitations of Litwin. Alexander states that he understood Jones had a *proposal* essentially ready for Litwin's consideration. This letter is couched in language which indicates a hope that a mutually acceptable sublease might be entered into some time in the future. It is clear that this memorandum does not establish that there has been a meeting of the minds as to the terms and conditions of a mutually acceptable sublease agreement. Considering all of these documents together, we have no hesitancy in concluding that the trial court was correct in sustaining Litwin's motion for summary judgment. Together they do not embody all the essential and material parts of a sublease with such clarity and certainty as to show that the minds of the parties had met on all material terms and with no material matter left for future agreement or negotiation. They were not sufficient to satisfy the requirements of the statute of frauds.

As its second point on the appeal, PEI contends that the trial court erred in granting summary judgment because there is contained in the record a sufficient factual basis for PEI to rely upon the doctrine of promissory estoppel. In *Walker v. Ireton,* 221 Kan. 314, 559 P.2d 340 (1977), this court adopted sections of 197 and 217A, Restatement (Second) of Contracts (Tent. Draft 1973), as the basis upon which an oral agreement to convey an interest of land may be enforced notwithstanding the statute of frauds. The plaintiff argues that it relied upon the oral promise of Litwin to enter into a sublease and as the result of such reliance vacated the Beacon Building's month-to-month tenants, incurred additional expenses of an architect, and retained $40,000 worth of electrical equipment which it could have sold at a profit had it not been misled by Litwin's promise. The fatal flaw in the plaintiff's argument is the absence of any proof of a preexisting "contract" or promise. Throughout the negotiations, Jones and PEI knew that the consummation of a lease agreement with Litwin was contingent upon two factors: finding a buyer for the parity bonds

and establishing a rental rate which was within Litwin's budget. It is clear from the record that neither of these two things had been accomplished when the three actions were taken by PEI. Jones, himself, was aware that giving notice to the month-to-month tenants in June of 1974 was risky. He took this action even though Alexander had warned him that Litwin was not yet in a position to agree to lease the Beacon Building. Jones's letter to the tenants actually recognized the possibility that the contract with Litwin might not be consummated. Jones, on behalf of PEI, vacated the tenants in June so that Jones could proceed more rapidly and less expensively to remodel the building without having to work around existing tenants.

The employment of the architect was necessary to determine whether or not an agreement could be reached with Litwin. The architectural services consisted of the drawing of plans and specifications, both for the specific features requested by Litwin and the general features necessary for the overall improvement of the building. The primary reason for having plans of the proposed construction drawn by the architect was to enable PEI to estimate the cost per foot to be charged as rent in a sublease and to make it possible for contractors to bid on the proposed remodeling. Such plans would be necessary before PEI could lease the building to *any* individual tenant. As to the failure of PEI to sell the electrical equipment, there is no suggestion that Litwin even knew of PEI's decision to retain the equipment. The electrical equipment was purchased months before Litwin appeared on the scene. Furthermore, even though it could have been sold for a profit in August, it is clear that some electrical equipment was needed to remodel the building for either single or multiple tenants. To summarize, we find no substantial evidence to show that PEI relied upon any representation of Litwin sufficient to justify application of the doctrine of promissory estoppel.

The judgment of the district court is affirmed.

HOLMES, J., not participating.