No. 59,447

RUTH COOPER, *Plaintiff/Appellant,* v. RE-MAX WYANDOTTE COUNTY REAL ESTATE, INC., WARREN H. BENNETT, ELAINE BENNETT, R. A. MATHER CONSTRUCTION COMPANY, INC., RONALD A. MATHER, DR. BEN RUBIN, CITY OF KANSAS CITY, KANSAS, and DONALD MATHER, *Defendants/Appellees.*

(736 P.2d 900)

Opinion filed May 1, 1987.

*Rosie M. Quinn,* of Kansas City, argued the cause and was on the brief for appellant.

*Barry E. Warren,* of Wallace, Saunders, Austin, Brown, and Enochs, Chartered, of Overland Park, argued the cause, and *Thomas D. Billam,* of the same firm, was with him on the briefs for appellee, Dr. Ben Rubin.

The opinion of the court was delivered by

PRAGER, C. J.: This is a civil action brought by the plaintiff, Ruth Cooper, against the defendant, Dr. Ben Rubin, and others to enforce an oral contract relating to the sale of real estate. In her petition, plaintiff alleged, in substance, that she had been the owner of certain real estate commonly known as 8940 State Avenue, Kansas City, Kansas, which was a portion of her homestead and located immediately adjacent to her home; that in March 1977, she entered into a contract to sell the real estate to the defendant, Dr. Ben Rubin, upon the express condition that he construct thereon a small medical building of 4,000 square feet so that the peaceful enjoyment of her homestead would not be disturbed.

Plaintiff alleged that thereafter in 1983, Dr. Ben Rubin sold the

real estate to the defendants, Warren and Elaine Bennett, who constructed a building somewhat larger than the small medical building promised by Dr. Rubin, for the purpose of operating a real estate business. Plaintiff further alleged that by the construction of the larger building, Dr. Rubin breached the contract that he had entered into with plaintiff, and, further, that the present owners had constructed a building which did not comply with the zoning requirements of the city of Kansas City, Kansas.

The plaintiff sought compensatory damages, punitive damages, and injunctive relief, both preventive and mandatory, restraining the defendants from occupying the building and requiring defendants to tear down portions and reconstruct the same to comply with city building codes and zoning ordinances. As to defendant Rubin, the plaintiff sought recovery of damages for breach of an oral contract.

The case was filed March 27, 1984, and was originally assigned to Judge William Mahoney, who twice denied the motion of defendant Rubin for summary judgment. Thereafter, defendant Rubin filed an affidavit of prejudice against Judge Mahoney. The case was subsequently consolidated with a related zoning case, and was assigned to Judge James J. Lysaught, Jr. Because of the illness of Judge Lysaught, the case was then assigned to Judge Lawrence G. Zukel, who granted defendant's motion for summary judgment based in part on the statute of frauds. Plaintiff filed a timely appeal to the appellate courts.

Plaintiff raises two preliminary issues having to do with the power of Judge Zukel to sustain the defendant's motion for summary judgment. Plaintiff first contends that reversible error was committed when the administrative judge removed Judge Mahoney from the case, because the statutory procedures governing the removal of judges was not adhered too. We find this point to be without merit. The administrative judge did not remove or disqualify Judge Mahoney in the case. He simply exercised his power to consolidate two cases in Wyandotte District Court and then assigned the cases to Judge Lysaught. Later, when Judge Lysaught became ill, the cases were reassigned to Judge Zukel. At no time was an order filed disqualifying Judge Mahoney from considering the case. The transfer of the case was simply an administrative procedure within the

authority of the administrative judge, which is frequently followed where two cases involving the same subject are consolidated in district court.

The plaintiff also maintains that Judge Zukel's granting of defendant Rubin's motion for summary judgment was error, because a similar motion for summary judgment had been denied twice by Judge Mahoney. The fact that Judge Mahoney had previously denied the defendant's motion for summary judgment did not preclude another district judge to whom the case was assigned from sustaining a motion for summary judgment subsequently filed by the defendant. The reason for this rule is that the denial of a motion for summary judgment is an interlocutory order and not a final order, *In re Estate of Ziebell*, 2 Kan. App. 2d 99, 575 P.2d 574 (1978). It may be reconsidered by the judge later as the facts in the case are developed. We hold that Judge Zukel had jurisdiction to consider and sustain the defendant's motion for summary judgment, even though a similar motion had been denied by another judge in the same case at an earlier time.

The basic issue presented on the appeal is whether the trial court erred in granting defendant Rubin's motion for summary judgment based upon the statute of frauds. Plaintiff maintains that legitimate questions of fact existed which precluded summary judgment. In order to determine whether or not there was error, we are required to apply the basic principles applicable in determining when summary judgment may be appropriate. In considering a motion for summary judgment, a trial court must give to a litigant against whom judgment is sought the benefit of all inferences that may be drawn from the admitted facts under consideration. A court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue necessitates a determination of the state of mind of one or both of the parties. *Bowen v. Westerhaus*, 224 Kan. 42, 578 P.2d 1102 (1978).

In granting defendant Rubin's motion for summary judgment in this case, the trial court stated that it believed the facts clearly showed that Cooper's claim brought against Rubin was barred by the statute of frauds. The trial court did not make any specific findings of fact upon which its opinion was based, but a review of the record and the briefs discloses that the relevant facts in the

case are undisputed and are as follows: Prior to February of 1977, plaintiff Cooper, as the owner of 8940 State Avenue in Kansas City, had determined to sell the property and placed the same in the hands of John H. DeLap for sale. According to the affidavit of DeLap, his realty company had signs on the property from August 1975 to July 1976 under a contract with Cooper for the sale of the property. Thereafter, the listing expired and, by February 1977, the property was no longer actively on the market for sale. The DeLap Company was thereafter contacted by Rod Minkin, a real estate agent, on behalf of Dr. Rubin, who wanted to make an offer on the property. DeLap contacted Cooper in February, informed her of the offer, and obtained from Cooper the exclusive right to sell the property to Dr. Rubin only.

The exclusive right to sell agreement is attached as an exhibit to plaintiff's brief. It is dated February 25, 1977, and signed by plaintiff Ruth Cooper and gives to DeLap's company (Century 21 Geer R.E.) an exclusive right to sell the property from February 18, 1977, to March 31, 1977. The right to sell agreement states as follows:

"It is understood that the property is offered for sale for the sum of $45,000.00 and on the following terms: CASH. This listing pertains to Ben Rubin Jr. only."

It is important to note that DeLap is authorized to sell the property to Dr. Rubin only for the sum of $45,000 cash, and there are no other conditions or terms or restrictions listed for the sale.

Thereafter, the two real estate agents representing each of the parties got Cooper and Dr. Rubin together and prepared a real estate contract which was signed by both parties.

The form of the real estate contract is important. The contract is dated March 4, 1977, and is between Ruth W. Cooper, a single woman, as seller, and Ben Rubin, Jr., as buyer. The contract is drawn in the form of an offer made by the seller Cooper which is then accepted by the buyer Rubin. After describing the property to be sold, the contract states that the same is subject to any covenants, restrictions, zoning laws, easements, party wall agreements, special easements, and community contracts *of record*. The purchase price is $45,000 and the down payment of $4,000 is acknowledged by the seller and has been deposited with the realtor, Century 21, the seller's real estate agent. The balance to be paid on the sale is $41,000.

The real estate contract contains a number of conditions typed in the printed contract. The pertinent ones are as follows:

(1) The buyers are granted 20 days to obtain a soil test, but not to include the driving of heavy equipment on the property. The buyers are to be responsible for any damages.

(2) Should soil tests not prove adequate, the earnest money is to be refunded.

(3) The buyer shall have 90 days to determine if a change in zoning to E-1 may be obtained.

(4) The buyer shall have the right and option to purchase a 25-foot strip of land adjoining the land's eastern edge for the period of 1 year from the sale date for the sum of $15,000.

(5) The buyer agrees to furnish seller an easement across his property for seller to hook on to sewers.

(6) The buyer shall have first right of refusal should seller decide to sell any or all of her remaining property.

It is noted that there is absolutely nothing contained in the printed contract to restrict the type of building to be constructed thereon by the buyer, Dr. Rubin. This offer of the plaintiff, as seller, was accepted by Dr. Rubin on March 11, 1977. The real estate contract was witnessed by John DeLap representing the seller only.

It is undisputed that an addendum, a rider, and a supplemental agreement to the real estate contract were executed and form a part of the final contract. The addendum to the contract, accepted March 11, 1977, contains the following language:

"Should Buyer be unable to obtain required zoning change or soil tests will not permit Buyer to construct *intended building* the Buyer agrees to pay for subject survey."

"Buyer and Seller agree the Subject Property that remains after rights-of-way have been removed will be approximately 123 feet by 326 feet to be determined by subject survey.

"Seller agrees to cooperate with Buyer in his attempts to determine if a change in zoning to E-1 may be obtained." (Emphasis supplied.)

It is undisputed that, prior to the sale, the property had a zoning classification of A-1 residential, and the zoning classification was to be changed to E-1, office and professional. It is also important to note that the use of the term "intended building"

refers only to the soil tests, and has nothing to do with the provision regarding a change in zoning.

There is contained in the plaintiff's brief on appeal a rider to the contract accepted March 11, 1977, which was executed by both the seller, Cooper, and the buyer, Rubin. This rider states that it is agreed between the parties that the change of the zoning to E-1 *or such other classification as Buyer selects*, shall occur prior to closing. It is further stated that the duties and obligations of the buyer under the contract are to be cancelled if the buyer is unable to secure a change in the zoning of the property to E-1 *or such other zoning classification which the buyer selects*. This provision is important because it gives the buyer the right to obtain a zoning classification other than E-1 (office and professional), if he so desires.

In the rider, it is also provided that, if the soil test does not indicate that the buyer can construct in a reasonable, normal manner the "type of building contemplated by Buyer," then the buyer may cancel its duties and obligations under the contract. Again, the reference to the type of building is concerned only with the soil test. The buyer is to be protected if the type of building contemplated by the buyer cannot be constructed because of the soil.

A supplemental agreement was entered into between the seller, Cooper, and the buyer, Rubin, dated May 6, 1977. This supplemental agreement extends the time for the buyer to obtain soil tests until July 15, 1977, and for the agreement to be cancelled and the down payment to be refunded in the event the soil tests do not indicate that the buyer can construct the type of building contemplated in a reasonable, normal manner. Again reference is made to the fact that the buyer shall have until June 27, 1977, to change the zoning classification to E-1 or *"such other zoning classification as Buyer selects."* The original contract, together with the addendum, the rider, and the supplemental agreement, constitute the entire contract between the parties. These various documents contain in writing a number of conditions for the protection of both the seller and the buyer. At no place in any of the instruments is there any restriction or condition that the defendant buyer must construct a 4,000 square foot building on the property.

Other documents attached to plaintiff's brief show that a petition for change of zoning was filed by Dr. Ben Rubin, Jr., with the city planning commission, seeking to change the zoning classification of the property from A-1 residential to E-1 office and professional. The plaintiff, Ruth W. Cooper, signed the petition as the owner of the property. In the petition, it is stated that the intended construction of the building is an office building of approximately 4,000 square feet. A change in zoning notice was sent to Ruth Cooper, stating that the following uses are permitted: "Any use permitted in 'E' Apartment; beauty parlor or barber shop, custom dressmaking or millinery shop, photographers, medical clinics, office for business or professional occupancy." The exhibits attached to the plaintiff's brief show that Dr. Rubin had prepared plans for a small medical building of approximately 4,000 square feet. The plans also provided for sixteen 10' × 20' parking spaces. The minutes of the planning commission indicate that Dr. Rubin appeared at the hearing and stated that the petition is for a one-story medical building for himself and his partner.

The petition for change of zoning was approved by the city planning commission. It cannot be denied that at the time the change in zoning was granted it was the intention of Dr. Rubin to build a one-story medical office building for himself and his partner.

There is also an affidavit in the record made by John H. DeLap. In his affidavit, DeLap states:

"I contacted Ms. Cooper, in late February, 1977, and told her of the offer and obtained an Exclusive Right To Sell Agreement for Dr. Rubin only. Ms. Cooper had some reservations about Dr. Rubin's use of the property, I therefore set up a meeting between Ms. Cooper and Dr. Rubin, on or about March 4, 1977. I was not in the room for the entire meeting, but I did hear Dr. Rubin tell Ms. Cooper that he planned to build a medical office for himself and other Doctors.

"Ms. Cooper seemed satisfied with Dr. Rubin's plans and a contract was entered into."

From this affidavit and the affidavit of plaintiff Cooper, we must assume that, at the time the written contract was entered into, Dr. Rubin advised Ms. Cooper, the plaintiff, that he planned to build a medical building of approximately 4,000 square feet and showed her the proposed plans for the building.

In plaintiff's written response to defendant's motion for summary judgment, plaintiff states that Dr. Rubin approached plaintiff with an offer to buy her land. The property was not for sale on the open market. Plaintiff was hesitant to sell the land as it adjoined her home, but Dr. Rubin promised her the land would be most beneficially used for the operation of a small 4,000 square foot medical building. She did not wish the land to be used for any other purpose than the small medical building previously mentioned.

The motion for summary judgment filed by Dr. Rubin denied that Dr. Rubin made *any agreement* that any particular structure would be built on the premises, although we must assume that a particular structure was contemplated by Dr. Rubin at the time the contract for sale was entered into.

After Dr. Rubin took possession of the property and the terms of the written contract were fully performed by both parties, Dr. Rubin admits that no building was ever constructed by him on the real estate. It is undisputed that he sold the property in 1983, six years later, to the defendants, Warren H. Bennett and Elaine Bennett. During the fall of 1985, the Bennetts and RE-MAX Wyandotte County Real Estate, Inc., commenced the construction of an office building larger than the 4,000 square foot medical building previously contemplated by Dr. Rubin. Plaintiff contends that, by construction of the larger building, Dr. Rubin breached the contract he had entered into with plaintiff Cooper in 1977, and that the other defendants, the Bennetts, RE-MAX Wyandotte Real Estate, and the contractors, wrongfully caused the present building to be constructed.

With the above facts before the court, Judge Zukel granted Rubin's motion for summary judgment. The trial court dismissed plaintiff Cooper's claim against Rubin on the basis that it was barred by the statute of frauds.

On this appeal, we have before us only the dismissal of plaintiff Cooper's claim against defendant Rubin. The other matters involving the propriety of the zoning change granted later are not now before the court. The basic issue presented to the court is whether the trial court erred in granting summary judgment on the motion of the defendant Rubin, on the basis that plaintiff Cooper's claim is barred by the statute of frauds.

Simply stated, plaintiff claims that defendant Rubin promised plaintiff that he would build a small office building of approximately 4,000 square feet and that he would use the land for the small office building and for nothing else. As stated above, Dr. Rubin relied on the statute of frauds as a defense to the claim. The Kansas statute of frauds, K.S.A. 33-106, sets forth certain specific cases where a writing is required before a cause of action may be brought for breach of contract. The statute, in substance, provides that no action shall be brought upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them, "unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing."

The general rule recognized throughout this country is that an oral agreement restricting the use of real property comes within the terms and application of those statutes which require certain classes of contracts to be in writing and which are generally termed statutes of frauds. See the annotation in 5 A.L.R.2d 1316, where examples of particular types of restrictions contained in an oral agreement are discussed.

In *Insurance Co. v. Haskett,* 64 Kan. 93, 67 Pac. 446 (1902), it was held that an easement for a private way is an interest in lands, and cannot be created by a parol grant. Thus, an oral contract granting an easement is within the statute of frauds. In *Ross v. Cook,* 71 Kan. 117, 80 Pac. 38 (1905), it was held that a contract for the sale of grass growing upon the land of the seller to be cut and removed by the buyer is one for the sale of an interest in real estate within the meaning of the statute of frauds, and cannot be enforced unless evidenced by a memorandum in writing.

In *Reeves v. Morris,* 155 Kan. 231, 124 P.2d 488 (1942), an action was brought by certain property owners to enjoin the threatened violation of certain restrictive agreements forbidding the erection of any buildings except single family residences in Lincoln Heights, an addition to the City of Wichita. These restrictions were contained in the deeds to various property owners after more than 5/6 of the land had been sold and

developed in conformity with such plan and restrictions. The developer of the property then attempted to sell some of the lots to which the foregoing plan and restrictions had applied, to be used for the purpose of erecting a church building. This use was in conflict with the general plan of development and restrictions therein and contrary to those observed throughout the addition. The joint property owners brought an action to enjoin the developer from completing the construction of the church. An injunction was granted which was affirmed by the Supreme Court. On appeal, the defendants contended that under the judgment of the trial court the plaintiff property owners hold an easement in the land of defendants; that an easement is an interest in land; and that under the statute of frauds a contract for sale of land or any interest therein is void unless the agreement is in writing. On appeal, the Supreme Court recognized that restrictive covenants have long been recognized in this state. These restrictions or equitable servitudes are based on the equitable principle of notice—that the person who takes land with notice of a restriction upon it will not in equity and good conscience be permitted to act in violation of these restrictions. The court held that the rights of the property owners were based solely on equitable principles. The developers were simply estopped from using the property for building a church under principles of equity.

It is clear to us that under established law, an oral agreement made in connection with a written contract for the sale of real estate, whereby the buyer agrees to build only a particular type of building on the premises, creates an interest in real estate and falls within the statute of frauds. Such an oral contract is not enforceable unless the equities of the case require its enforcement.

In the case now before us, neither the original real estate contract accepted by the buyer on March 11, 1977; nor the addendum to the contract accepted March 11, 1977; nor the rider agreement accepted March 11, 1977; nor the supplemental agreement dated May 6, 1977, restricted the buyer, Dr. Rubin, as to the type of building he could build on the premises. If we apply the statute of frauds and the cases interpreting the same, any oral contract restricting the use of the premises is unen-

forceable and cannot be made the basis for a cause of action, unless principles of equity require the oral agreement to be enforced. A restrictive covenant imposing a restriction upon the use of real property is an interest in land within the statute of frauds, including any restriction on the size and type of building to be constructed by the buyer on the real estate purchased.

The plaintiff seeks to avoid the application of the statute of frauds by relying on the doctrine of equitable estoppel recognized in *Walker v. Ireton*, 221 Kan. 314, 559 P.2d 340 (1977). In *Walker*, this court held that a contract for the transfer of an interest in land may be specifically enforced notwithstanding failure to comply with the statute of frauds (K.S.A. 33-106), if it is established that the party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific enforcement. Syllabus ¶ 2 states:

"A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires. In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are influential: (1) the availability and adequacy of other remedies, particularly cancellation and restitution; (2) the definite and substantial character of the action or forbearance in relation to the remedy sought; (3) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence; and (4) the reasonableness of the action or forbearance and the misleading character of the promise."

In *Walker*, 221 Kan. at 320, it is stated that from the beginning the basis for removal of a case from the application of the statute of frauds has been the reliance by one of the parties to the oral contract to his detriment under circumstances where gross injustice would result unless the oral contract was enforced. The statute of frauds was enacted to prevent fraud and injustice, not to foster or encourage it, and courts will, so far as possible, refuse to allow it to be used as a shield to protect fraud and as a means to enable one to take advantage of his own wrong. Furthermore, where it is sought to enforce an oral contract for the sale of an

interest in real estate on the grounds that it has been performed by the party seeking to enforce it, it must appear that a failure to enforce would amount to a fraud against the party. It is further stated that, absent compelling equitable considerations, an oral contract within the statute of frauds will not be specifically enforced. The *Walker* opinion considered all of these various principles and concluded that, under all the facts and circumstances, equity did not require the statute of frauds to be removed as a defense to the action for specific performance of the oral contract. There was no claim that there was any relationship of trust or confidence between the parties. There were no allegations or evidence of false representation of existing facts.

The problem in the present case is to determine whether or not equity requires the statute of frauds to be removed as a defense to any alleged oral contract that defendant Rubin would build a building no larger than a 4,000 square foot office building on the purchased property. From the undisputed facts and circumstances in this case, we have concluded that the trial court did not err in granting summary judgment to defendant Rubin and in dismissing the claim asserted against him by plaintiff Cooper. In arriving at this conclusion we have considered as important the following undisputed facts:

(1) The seller, Cooper, had the intent to sell the particular property long before Dr. Rubin appeared as a prospective purchaser. It is undisputed that the property had been listed with the realtor, John DeLap, from August 1975 to July 1976, when the listing expired. Thus, apparently, prior to 1977, plaintiff Cooper was willing to sell the property to any purchaser that might come along and meet her purchase price.

(2) Plaintiff Cooper entered into an exclusive right to sell agreement with her realtor, John DeLap, in which Cooper stated that it was understood that the property was offered for the sum of $45,000, on the following terms: Cash and that the listing pertained to Ben Rubin only. If the seller really intended that the property should not be sold unless a restriction was placed in the contract limiting the size of the building to be constructed, why was that express provision not included in the seller's contract with the realtor?

(3) John DeLap was the realtor employed by seller Ruth

Cooper. Buyer Rubin's real estate agent was Rod Minkin, who contacted John DeLap about Dr. Rubin wanting to make an offer on the property. According to DeLap's affidavit, the seller Cooper had some reservation about Dr. Rubin's use of the property and a meeting was set up between Cooper and Dr. Rubin just prior to the time the contract was entered into. DeLap heard Dr. Rubin tell Cooper that he planned to build a medical building for himself and other doctors, and Cooper seemed to be satisfied with Dr. Rubin's plans and thereafter the contract was entered into. The real estate contract was apparently prepared by John DeLap, because the contract was made in the form of an offer by the seller, Cooper, which was accepted by defendant Rubin. There were many written conditions listed in the sales contract, but nothing was included therein restricting the size of the building to be constructed on the site. If that had been the intent of the seller, Cooper, why did she not inform her realtor, DeLap, that the restriction should be included within the written contract?

(4) The only mention of an "intended building" in the addendum contract and in the rider is in connection with soil tests to be made upon the property which would be necessary in order to determine whether a particular building could be constructed on the premises and which would permit the buyer to cancel the contract if the soil tests were not satisfactory.

(5) We also think it important that both the rider to the contract, accepted March 11, 1977, and the supplemental agreement dated May 6, 1977, do not restrict the buyer Rubin to a change in zoning to an E-1 classification, but permit the buyer to obtain such other zoning classification as the buyer selects. Why would a seller who obtained and relied upon a promise from the buyer that the building was to be of a type included in an E-1 classification agree that the buyer could obtain not only a change to an E-1 zoning classification but such other zoning classification as the buyer might desire?

(6) We think it clear from the evidence that, at the time the property was purchased and the zoning was changed, Dr. Rubin did intend to build a one-story medical building in accordance with his plans. It is also true that, after he acquired the property, Dr. Rubin did not build the building. If at the time of the sale,

Dr. Rubin intended to commit a fraud upon the seller by selling the property at a greatly enhanced price to some other purchaser, would he not have done so within a short period of time? Instead, Dr. Rubin held the property for some six years and then in 1983 sold the property to the Bennetts, who had no knowledge of the claims of the plaintiff until after construction of their office building was commenced.

In view of all these circumstances, which are undisputed in the record, we have concluded that equity does not require the statute of frauds to be excluded as a defense to the action for breach of contract in this case. There was no showing of any relationship of trust or confidence between the seller, Cooper, and the buyer, Rubin. There was no evidence of any false representation of an existing fact at the time the contract was entered into. The seller Cooper was represented at all times by her realtor. Any discussions as to the type of building to be built upon the premises were apparently not deemed important enough to the seller to be included as a condition in the written contract of sale. As noted above, in order for the doctrine of promissory estoppel to be applicable, it must be shown that its enforcement is necessary to avoid injustice. In our judgment, equity and justice in this case do not require enforcement of the alleged oral contract either by way of specific enforcement or by permitting the seller to recover damages from the defendant, Rubin.

The judgment of the district court is affirmed.