(873 P.2d 212)
No. 70,206

Owasso Development Company, *Appellant*, v. Associated Wholesale Grocers, Inc., *Appellee*.
Petition for review denied 255 Kan. 1003 (1994).

Opinion filed April 29, 1994.

*Robert J. Campbell* and *Leland H. Corley*, of Lewis, Rice & Fingersh, of Kansas City, Missouri, for appellant.

*James M. Warden* and *William F. High*, of Blackwell Sanders Matheny Weary & Lombardi, of Overland Park, and *William H. Sanders, Sr.*, of Blackwell Sanders Matheny Weary & Lombardi, of Kansas City, Missouri, for appellee.

Before Gernon, P.J., Elliott, J., and Donald L. White, District Judge Retired, assigned.

Elliott, J.: Owasso Development Company (Owasso) appeals the summary judgment in favor of Associated Wholesale Grocers, Inc., (AG) contending the trial court misconstrued existing law regarding the availability of promissory estoppel, arbitrarily disregarded controverted material facts, and erred in ruling there was no manifest injustice sufficient to support its theory of promissory estoppel.

In 1987, Central Park Development (Central Park) talked with AG about a 19-acre piece of ground in Owasso, Oklahoma. AG was to lease a grocery store to be built there, next to an existing K-Mart. Central Park ran into financial difficulties, and Scott Wilmoski of AG contacted Irvin Maizlish to see if he might be interested in the project. Maizlish and William Knoth formed Owasso. Knoth then began working to bring a Wal-Mart store into the project.

According to Maizlish, Wilmoski orally promised that if Owasso acquired the land, AG would lease a grocery store. But when asked for a letter of intent, Wilmoski refused to give one.

Wilmoski admitted he had negotiated on rent, but insisted many other issues remained to be resolved. At most, he said, AG was willing to proceed with negotiations. John Sweeney of Owasso stated there were still terms to be negotiated between AG and Owasso. And Knoth admitted there were still some "boilerplate" issues remaining to be worked out.

Several draft leases exchanged hands, but Scrivner's, a rival grocery store, agreed to sublease the adjacent K-Mart property. AG then decided not to lease the property from Owasso. This suit followed.

Owasso claims the trial court erred in entering summary judgment. Summary judgment, of course, is proper under certain conditions. *Patterson v. Brouhard*, 246 Kan. 700, 702, 792 P.2d 983 (1990).

Owasso does not dispute that the Statute of Frauds would bar recovery on the alleged oral contract. Owasso relies on promissory estoppel to enforce AG's alleged promise. See *Walker v. Ireton*, 221 Kan. 314, Syl. ¶ 2, 559 P.2d 340 (1977).

Before promissory estoppel can be invoked in a case involving the Statute of Frauds, Owasso must first show a valid and otherwise enforceable contract was entered into by the parties. *Decatur Cooperative Association v. Urban*, 219 Kan. 171, 179, 547 P.2d 323 (1976).

In *Bank of Alton v. Tanaka*, 247 Kan. 443, 453, 799 P.2d 1029 (1990), the court stated that before partial performance can take an oral agreement for the sale of land out of the Statute of Frauds, the contract must be fully made and completed in every respect, save the actual writing. While *Bank of Alton* dealt with partial performance rather than promissory estoppel, it nonetheless provides guidance as to the type of promise necessary.

Other states are split on the type of promise necessary to trigger promissory estoppel. Many states require an agreement as to all essential elements of a contract. See *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School*, 202 Conn. 206, 214-15, 520 A.2d 217 (1987); *W.R. Grace & Co. v. Geodata Services*, 547 So. 2d 919, 924-25 (Fla. 1989); *Black Canyon Racquetball v.*

*First Nat.*, 119 Idaho 171, 178, 804 P.2d 900 (1991); *Keil v. Glacier Park, Inc.*, 188 Mont. 455, 462-63, 614 P.2d 502 (1980); *Lohse v. Atlantic Richfield Co.*, 389 N.W.2d 352, 357 (N.D. 1986); *Weitzman v. Steinberg*, 638 S.W.2d 171, 176 (Tex. Civ. App. 1982). The rationale for these cases seems to be that incomplete agreements based on agreements merely to negotiate ought not be enforced by promissory estoppel. *E.g., Lohse v. Atlantic Richfield,* 389 N.W.2d at 357.

Other states have held the promise necessary to trigger promissory estoppel need not embrace all essential elements of a complete contract. See *Quake Construction v. American Airlines*, 141 Ill. 2d 281, 310, 565 N.E.2d 990 (1990); *Rosnick v. Dinsmore*, 235 Neb. 738, 749, 457 N.W.2d 793 (1990); *Bixler v. First National Bank*, 49 Or. App. 195, 199-200, 619 P.2d 895 (1980); *Hoffman v. Red Owl Stores, Inc.*, 26 Wis. 2d 683, 697-98, 133 N.W.2d 267 (1965). The rationale here seems to be that the remedy in promissory estoppel is different than that in a breach of contract action and can be modified as justice demands. *E.g., Rosnick v. Dinsmore*, 235 Neb. at 749.

It appears to us that the holding in *Bank of Alton* indicates the Kansas Supreme Court would require an agreement on all material elements of the contract. Even viewing the facts in a light most favorable to Owasso, it is clear AG's alleged promise was nothing more than an agreement to further negotiate. The trial court did not err in granting summary judgment for AG.

For a general discussion of this topic, see Barnett & Becker, *Beyond Reliance: Promissory Estoppel, Contract Formalities, and Misrepresentations*, 15 Hofstra L. Rev. 443 (1987); Feinman, *The Last Promissory Estoppel Article*, 61 Fordham L. Rev. 303 (1992); Yorio and Thel, *The Promissory Basis of Section 90*, 101 Yale L.J. 111 (1991).

Owasso also claims the trial court erred by disregarding additional statements of fact submitted by it. We disagree.

In its motion for summary judgment, AG listed 57 paragraphs of "uncontroverted facts." Owasso filed 57 paragraphs purporting to controvert AG's statements, plus 55 paragraphs of additional facts.

Our review of the record shows that although the trial court stated Owasso's additional statements were "supplemental," the court actually adopted several of them.

Having decided a promise sufficient to trigger promissory estoppel must include all elements essential to an agreement, any error on this issue was harmless. See *Tamplin v. Star Lumber & Supply Co.*, 251 Kan. 300, Syl. ¶ 3, 836 P.2d 1102 (1992).

Owasso also contends the trial court's determination refusing to rule injustice could be avoided only by enforcing the "agreement" was in error.

There is a problem with Owasso's argument: Even if AG were aware of the risk that K-Mart would pull out when faced with competition from Wal-Mart, and even if AG were happy to have Wal-Mart join the equation, that does not mean Owasso's actions did not set off the chain of events which caused AG to pull out of the deal.

Further, there is no evidence in the record to support the assertion the trial court ignored the fact Owasso refused an opportunity to deal with Scrivner's at the request of AG.

Owasso admits the parties (it and AG) had no actual lease and, in fact, had not agreed on all terms of a lease and admits that negotiations were still ongoing.

Given these circumstances, the trial court did not err in finding this was not a case where injustice could be avoided only by enforcement of the alleged AG promise.

Affirmed.