No. 32,026

ANNA HEINE, *Appellee*, v. THE FIRST TRUST COMPANY OF WICHITA, Administrator of the Estate of Margaret Schindler, Deceased, and THE STATE OF KANSAS, ex rel. ROLAND BOYNTON, Attorney-general, *Appellants*.

(41 P. 2d 767)

Opinion filed March 9, 1935.

*Roland Boynton*, attorney-general, *W. C. Ralston*, assistant attorney-general, *Martin P. Shearer*, *L. A. Hasty* and *L. P. Brooks*, all of Wichita, for the appellants.

*George McGill*, *H. C. Castor*, *Victor J. Rogers*, *A. M. Buzzi*, *Harold Irwin*, all of Wichita, and *R. C. Parrish*, of Fort Wayne, Ind., for the appellee.

*E. L. Foulke*, *Roy H. Wasson* and *C. E. Robb*, all of Wichita, as *amici curiæ*.

The opinion of the court was delivered by

SMITH, J.: This is a claim against the administrator of the estate of Margaret Schindler, deceased, for personal services based upon an alleged oral contract. Judgment was for claimant. The administrator appeals.

Margaret Schindler died in Wichita on March 15, 1930. She died intestate and, as far as is now known, without heirs. She left an estate of approximately $75,000. On account of the statutes which provide that when one dies intestate and without known heirs the estate after the lapse of a certain number of years escheats to the state for the benefit of the common school fund, the attorney-general,

as well as the attorney for the administrator, appeared in this action to safeguard the interests of that fund. Since the death of Mrs. Schindler several actions have been brought by persons who claimed to be heirs, or by persons who claimed the estate or a part of it on account of an alleged contract with Mrs. Schindler during her lifetime. None of the claimants have been successful so far in this court.

This court took cognizance of the situation in the opinion in *McVeigh v. First Trust Co.*, 140 Kan. 79, 34 P. 2d 571. In that opinion it was suggested that wherever possible, without prejudice to the rights of litigants, these cases should be consolidated, heard together and finally disposed of so that the estate will not be consumed in the expense of litigation.

The claim in the present case concerns a contract alleged to have been made by deceased in 1887. In that year Mrs. Schindler and her husband were keeping house in Indianapolis. He owned and operated a hardware store there. For some time before his death there is evidence that his mind was impaired. He died in 1899. Soon after his death Mrs. Schindler moved to Wichita, where she resided until her death. The claimant in 1887 was 15 years old. In that year she started to work for Mr. and Mrs. Schindler, doing housework in the home. She continued in this capacity until 1898, except for one year while the family was in California. There was evidence that she helped care for Mr. Schindler in his last illness. She was paid $2 a week and board and room. The claim is for the difference between that amount and what she claims to have been reasonable compensation for the services performed. In 1892 claimant started keeping company with the man she afterwards married, and who is still her husband. Claimant continued to work for the Schindlers until 1898. In that year Mr. Heine completed his studies for the ministry, which he had started when he entered the theological seminary in 1892, and he and claimant were married.

After pleading the facts, about as above set out, plaintiff pleaded first that in April, 1887, she made an oral contract with Mrs. Schindler to perform personal domestic services in the home of Mrs. Schindler and "in consideration whereof Margaret Schindler agreed to pay this plaintiff well and at full value for said services to be performed by the plaintiff by making a will with a devise, bequest or legacy in said will to this plaintiff for the amount due this plain-

tiff over and above any amount actually paid to the plaintiff during the time said services were rendered."

As thus pleaded, this contract is one for no definite term and in which claimant agreed to wait until Mrs. Schindler's death for part of her compensation.

The petition then alleged the performance of her part of the contract until June 1, 1898, except for a year from December 1, 1892, to December 1, 1893, when Mr. and Mrs. Schindler were in California.

The petition alleged further that the condition of Mr. Schindler grew steadily worse and that he became insane and helpless before he died.

The petition then alleged that in 1892 claimant became acquainted with William Heine; that William Heine was about to leave Indianapolis, Ind., and remove to Springfield, Ill., to enter a theological seminary there, where he would remain six years; that Mrs. Schindler became alarmed for fear this would cause claimant to leave her employ and go to Springfield to seek employment in that city; and that the said Margaret Schindler at said time reaffirmed the oral agreement in all respects hereinbefore mentioned and requested that this plaintiff remain in the service of the deceased, particularly on account of her ability to handle Mr. Schindler, until such time as William Heine should graduate from his studies, and that she, the deceased, would compensate plaintiff well in her will for such services; that this plaintiff agreed to, and did so remain until June 1, 1898, at which time the said William Heine graduated and this plaintiff and the said Rev. William Heine were married.

The petition alleged the performance of the contract on the part of claimant; that the reasonable compensation for the services performed was $22 per week; and prayed judgment for $10,400, this amount being claimed to be the difference between the amount actually paid and the reasonable compensation for the services.

Defendants filed a general denial and raised the defense of the statute of frauds and the statute of limitations. Trial was before a jury. At the close of the case for the claimant, the trial court sustained a demurrer to the evidence of claimant in so far as it related to the contract claimed to have been made in 1887, but submitted the question of the contract claimed to have been made in 1892 to the jury. A verdict in favor of claimant was returned. Judgment was entered accordingly; hence, this appeal.

Defendants argue that the claim is barred by the statute of limitations; that there is no substantial evidence of the agreement pleaded; that the only agreement sought to be proved is barred by the statute of frauds; that the claim is barred by the statute of nonclaim; that there is no substantial, competent evidence that claimant was not paid the value of her services.

The position of claimant is that the claim is not barred by the statute of limitations because it did not accrue until the death of Mrs. Schindler, and that action was brought within the statutory time after her death.

This contention will be dealt with later in this opinion. On the question of whether there was substantial evidence of the agreement pleaded, the record must be examined.

The evidence on this point was the oral testimony of claimant and her husband. In brief, claimant's testimony was as follows:

"Q. Now, did you ever have a conversation with Mrs. Schindler in reference to what she would do for you if you would remain and work as a domestic in the family? A. Yes; she talked it over with me and made the agreement if I would stay with her.

"Q. Now, Mrs. Heine, what was the agreement? A. Well, that she would will or do good for me if I would stay with her. That she would pay me well.

"Q. How was she going to pay you? A. In her will, she would will me some of her property, make it good that way.

"Q. After you had what you call an agreement with her did you stay in the family and work? A. I stayed with them.

"Q. When did she make that agreement with you, Mrs. Heine? A. That was in 1892."

Referring to the matter, she later said:

"In 1892 Mr. Heine came to see me frequently at the Schindlers. It was about then that we became engaged. Mrs. Schindler knew it. She discussed it with us. In the presence of my husband Mrs. Schindler said to me 'that if I would stay with her she would will me something. If I would stay with her until I got married she would make it good with me.' The length of time Mr. Heine would be away at college she knew, and that was six years."

That was all that claimant knew about the contract in June, 1931, and she did not attend the trial because of illness. When the case was tried in March, 1934, her husband testified in court and said:

"I began to keep company with Anna Huebner (claimant's maiden name) at the end of 1888 and went to the Schindlers to see her perhaps once or twice a week. I concluded to enter the Evangelical Lutheran pastorate in the spring of 1892 and at that time I had some conversation with Margaret Schindler about entering the pastorate. That was in June of 1892, when I was on my way to enter college in the fall."

"Anna Huebner and I were engaged prior to the time I decided to go to school. Mrs. Schindler approached me about our engagement.

"She proposed to me. Anna Huebner told her we were engaged and that we had made an agreement with each other ahead of time that she would stay with them and they would will all their property to her, and now she had broken this agreement—understand—she is engaged to me and so she arranged another agreement that she wanted her to stay with her anyway up to the time that I would finish my study and get married for the reason to help her along in the household affairs and especially in helping her to take care of the insane Mr. Schindler, and she had on her side agreed that she would later on make good for this service to stay there up to that time, to will plenty of property to her, and so she told me to consent to this, not to interfere and not to coax her away."

He further testified that at the time of this conversation he knew he would be at school six years and that it could not be shorter than six years and that Mrs. Schindler knew this. He further testified as follows:

"Q. Had Anna made any arrangements at the time that conversation was had to leave the employ of Mrs. Schindler, that you know of? A. Mrs. Schindler somewhat was worrying that she would leave.

"Q. But do you know whether Annie had made any plans or arrangements to leave? A. No, no; there was no plan made. Worry without reason."

There was some other evidence offered to support the contentions of claimant but it is not deemed of sufficient importance to be noticed here.

In brief, the contract pleaded is that claimant agreed to stay and work for the Schindlers for six years and in return Mrs. Schindler agreed to pay her a reasonable compensation by way of a bequest at the time of her death. It must be remembered that nothing is pleaded about the $2 per week which claimant received during the time that she was working.

The evidence offered to sustain this contract is that claimant had no intention of leaving the employ of the Schindlers but that Mrs. Schindler told her that if she would stay with them for six years they would "do good" for her or pay her well. The evidence of the husband was to the same effect, except that he testified that Mrs. Schindler agreed to will plenty of property to her.

It should be stated here that this claim is brought altogether upon a contract. There can be no recovery unless the contract is proven. The position of claimant on the question of the statute of limitations precludes any conclusion but this. Since that is the case, we must examine what the evidence shows to have transpired between

claimant and Mrs. Schindler. In order for a contract to exist there must be a meeting of the minds. On what proposition did the minds of the parties meet here? First, that claimant was to stay and work for six years. Examining the record, we fail to find any evidence that claimant was about to leave had this alleged contract not been made or that she was dissatisfied with the wages she was receiving. What does the record show on the side of Mrs. Schindler, on which the minds of the parties met? In the light of the circumstance just spoken of, that claimant had no intention of leaving, and in the absence of evidence that claimant was dissatisfied with what she was receiving, we must construe the statements of Mrs. Schindler. The language speaks of no fixed remuneration for claimant. No standard of measurements by which claimant or Mrs. Schindler could tell how much Mrs. Schindler was to leave claimant in her will is given. Considered together with all the surrounding facts and circumstances, what is proven by this evidence? Little more than the expression of an intention by Mrs. Schindler to leave claimant something in her will, the amount being whatever Mrs. Schindler might at that time deem appropriate. Claimant in 1892 did just what she had intended to do; that is, she continued in the only job she had ever had. This conclusion is fortified by the fact that after the conversations that it is claimed constituted the contract relied on here, that is, in December, 1892, the Schindlers took a trip to California and were gone a year. Claimant took employment in another family while they were gone. The testimony of claimant is that the Schindlers begged her to come back. Presumably claimant might contend that they wanted her back under the old agreement and she might have come back under it, but there is no evidence to justify such a presumption.

Claimant cites and relies upon many authorities wherein this court has upheld contracts to bequeath property in return for services performed. We do not understand that such a rule is questioned here. The point is that the evidence offered, given its most favorable interpretation, does not prove the contract pleaded.

In the case of *Purcell v. Miner*, 4 Wall. (U. S.) 513, 18 L. Ed. 435, an oral contract of this sort was considered. The court said:

"It cannot be made out by mere hearsay, or evidence of the declarations of a party to mere strangers to the transaction, in chance conversation, which the witness had no reason to recollect from interest in the subject matter, which may have been imperfectly heard or inaccurately remembered, per-

verted or altogether fabricated; testimony, therefore, impossible to be contradicted." (p. 518.)

In *Bateman v. Franklin*, 114 Kan. 183, 217 Pac. 318, this court said, in speaking of such a claim:

"But such claims may be *bona fide,* and when they are such and are established by clear and convincing evidence, they are perfectly legitimate and must be respected and enforced . . . So far as now appears, it is merely a question whether plaintiff can clearly and convincingly establish the material facts alleged in his petition." (p. 185.)

See, also, 66 A. L. R. 66, note.

The authorities are overwhelming that to support a contract of this sort the evidence must be clear and convincing and the terms of the contract must be definite and certain. In the case at bar, far from being clear and convincing, the evidence was not such as to warrant submitting to the jury the question of the existence of the contract and the contract pleaded was not definite and certain in its terms as to what was to be done by Mrs. Schindler.

Defendants next argue that the agreement sought to be proved is void under the statute of frauds because it could not be performed within a year. R. S. 33-106 provides:

"No action shall be brought . . . upon any agreement that is not to be performed within the space of one year from the making thereof, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing."

There is no question here but that claimant agreed to work for a term of six years or until 1898. Since nothing was offered to show what the laws of Indiana were at that time, it is presumed that the statute of that state was the same as the law of this state, quoted above. In this connection, claimant argues that even if the contract cannot be enforced, claimant could recover on *quantum meruit*.

There are two answers to this argument. The first has been spoken of heretofore. That is, the action is based not on *quantum meruit*, but strictly on contract. In the second place, if the action was on *quantum meruit*, it was barred by the three-year statute of limitations three years after the last services were performed in 1898. The fact that the contract had been performed on the part of promisee does not take it out of the statute. That doctrine applies only to contracts that relate to land. (See *Osborne v. Kimball*, 41 Kan. 187, 21 Pac. 163, and cases cited.) This case comes clearly

under that rule. In *Wonsettler v. Lee*, 40 Kan. 367, 19 Pac. 862, this court held:

"A party who performs labor for another under a verbal contract not capable of performance within one year, and which the other party refuses to carry out, cannot enforce such agreement; but the party refusing to perform, and who has received the benefits of the labor, is liable for the same upon a *quantum meruit.*" (Syl. ¶ 1.)

See, also, 27 C. J. 359, where it is said:

"Plaintiff is entitled to compensation only under such circumstances as would warrant a recovery in case there was no express contract."

Since we have concluded that where the contract is unenforceable the recovery is on *quantum meruit,* the three-year statute of limitations has barred recovery. On account of the conclusion that has been reached with reference to the two questions discussed, it will not be necessary to discuss the other questions raised by defendants.

The judgment of the trial court is therefore reversed, with directions to enter judgment for defendants.