**L. E. FREY, Appellant,**

v.

**Gerald FRANKEL and Duo-Bed Corporation, a corporation, Appellees.**

**No. 8087.**

United States Court of Appeals Tenth Circuit.

April 15, 1966.

Rehearing Denied June 17, 1966.

---

Robert Martin, Wichita, Kan. (George B. Collins, Oliver H. Hughes, K. W. Pringle, Jr., W. F. Schell, Robert M. Collins, William L. Oliver, Jr., William V. Crank, and Tom C. Triplett, Wichita, Kan., Thomas M. Burns and Peter J. Wall, Denver, Colo., on the brief), for appellant.

George C. Spradling, Wichita, Kan. (W. F. Lilleston, Henry V. Gott, George Stallwitz, Ralph M. Hope, Ronald M. Gott, Glenn D. Young, Jr., and Edward H. Graham, Wichita, Kan., on the brief), for appellees.

Before MURRAH, Chief Judge, PICKETT, Circuit Judge, and LANGLEY, District Judge.

PICKETT, Circuit Judge.

This action followed a reorganization of defendant Duo-Bed Corporation under the provisions of Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701, et seq. Plaintiff Frey, former president and principal stockholder of the corporation, seeks to recover damages for failure of the reorganized corporation and the defendant Frankel to comply with the terms of an alleged employment and option-to-purchase stock contract after confirmation of a proposed plan of reorganization. This is an appeal from a summary judgment in favor of the defendants on the four causes of action of the complaint, and from a summary

judgment in favor of the defendants on a counterclaim.

Duo-Bed was engaged in the manufacture and sale of a patented line of bedding and other furnishings used principally by hotels and motels. In 1960 it moved its operations to Wichita, Kansas, and there it continued in business. Early in 1962 it was hopelessly insolvent,[1] and on June 9, 1962, filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, but no plan was then submitted. At the first meeting of the creditors, Frey stated that in case of liquidation, available assets would be sufficient only to pay the costs of the bankruptcy proceedings. At this meeting it was agreed that the corporation could not continue in business unless outside capital were found. A creditors' committee, with the help of Frey, decided to explore the possibility of securing sufficient capital to finance a feasible arrangement.

Thereafter, Frey, while in Chicago, discussed the situation with Joseph D. Shane and defendant Frankel, who expressed an interest. Following an investigation, including an inspection of the corporation facilities, Frankel indicated that he and his associates were willing to finance an arrangement to be submitted to the court and creditors.[2] During the preliminary discussions between Frey and Frankel, it was understood that any suggested plan would require a change in the controlling stock of the corporation. It was also understood that the plan to be submitted would provide that Frey should be given an option to purchase one-third of the new stock which was to be issued, together with a 5-year contract of employment with the corporation at a salary of $2,000 per month. Attorneys were instructed to prepare the employment agreement and stock purchase option. In a letter of intent,[3] Frankel submitted to the creditors a tentative proposal which included these provisions relating to Frey.[4] The creditors, however, were not satisfied and notified Frankel that they would not approve a plan which did not provide (1) working capital of $250,000 to $350,000; (2) new management for the corporation, in which Frey was not to participate; and (3) that corporation debentures should be issued to all unsecured creditors in the amount of 35% of their approved claims which could be redeemed in cash for not less than 10% of their claims.

Thereafter Frankel consulted all interested parties, including Frey, and attorneys representing the corporation and Frey, in an attempt to arrive at an acceptable proposal. On August 28, 1962, Frey, as president of the corporation, submitted to the court a plan differing materially from that of the original letter of intent, but generally in conformity with the suggestions of the creditors'

---

1. When the petition was filed, the corporation had secured debts of approximately $1,400,000, and unsecured debts of approximately $2,000,000.

2. Under the proposed plan, Frankel was to furnish one-half of the needed funds and Joseph D. Shane and his sister, Beatrice Rosenus, the remaining one-half.

3. As stated in appellant's brief, "These agreements are the basis of plaintiff's First Claim for Relief."

4. This proposal, or letter of intent, included this statement:
"A satisfactory agreement has been achieved with Elliott Frey under the terms of which he agrees to remain with the corporation in a management position, at a starting salary of not to exceed Two Thousand Dollars ($2,000.00) a month and with a restricted stock option, permitting him, for a period of five years, to acquire stock ownership of not to exceed one-third (⅓rd) of the total Class A Common Stock outstanding, from time to time, at a price equal to the price paid by us for our participation."
The letter concluded with this statement:
"This does not, however, constitute any final agreement on our part, it being understood that a final agreement will be drafted and entered into after all of the above matters have been resolved to our satisfaction."

committee. This plan required Frankel and his associates to purchase 250,000 shares of a new issue of Class A Common stock at $1.00 par, and to furnish additional funds in the amount of $100,000 as working capital. The Class A stockholders would have all voting rights in the corporation, except that the existing stockholders could collectively elect one director. Upon approval of the plan, Frankel was to be the chief managing officer. Each common creditor was to receive, in satisfaction of his claim, a corporation debenture in an amount equal to 35% of his allowable claim, and provision was made for all creditors desiring to sell such debentures to be paid in cash 12% of their original claims. Prior to the hearing on the proposal, Frey, as president of the corporation, filed an affidavit wherein it was stated:

> "(S)aid corporation has not directly or indirectly paid or promised any consideration to any attorneys, trustee, receiver, creditor, or other person in connection with the proceedings, herein, except as provided by the arrangement proposed herein. * * *"

Attached to this affidavit was an instrument executed by Frey wherein it was stated that as an inducement to Frankel and his associates to provide the necessary funds to implement the proposed plan, Frey agreed to assign and transfer to the corporation his interest in described patents and to assign his stock in Duo-Bed Corporation to Frankel and his associates, or their nominees. Defendants' counterclaim seeks enforcement of this instrument.

The plan was confirmed by the court. The corporation charter was amended to provide for the issuance of one million shares of $1.00 par value Class A Common stock which would control the company. The existing stock was subordinated as Class B stock and collectively could elect one corporate director. The corporation was authorized to issue de-

bentures as required by the plan. Frankel and his associates assumed control of the corporation, purchased 250,000 shares of Class A stock, advanced $100,000, and arranged for the purchase of the debentures, in accordance with the plan, on their personal credit Frey was employed as a salesman and designer at $2,000 per month. After the reorganization, there were continuous negotiations between Frey and Frankel in an attempt to agree upon a 5-year employment contract and an option to purchase 125,000 shares of Class A stock at par value. The parties were unable to reach an agreement, and difficulty arose between Frankel and Frey which resulted in Frey's discharge in May, 1963, after approximately six months of employment.

In his first cause of action, Frey alleges that he is entitled to damages for the failure to employ him for a period of five years at $2,000 per month, and the failure to execute and deliver to him a fair and reasonable option to secure one-third of the Class A stock issued by the corporation. The second cause of action seeks damages resulting from fraud on the part of Frankel in inducing him to surrender his rights to the Class B Common stock of the corporation, and patent rights. The third cause of action is in the nature of a stockholder's derivative suit seeking to require Frankel and his associates to account to the corporation for all losses resulting from the wrongful purchase and acquisition of corporation debentures by Frankel and his associates from the creditors. The purpose of the fourth cause of action is to require Frankel and his associates to restore to Frey all patents and stock interests acquired by them in Duo-Bed upon tender or repayment of their investment in Duo-Bed. The trial court was of the opinion that Frey, as a participant in the reorganization proceedings, is estopped to assert not only the alleged employment and stock-option agreements, but also his claim to the Class B stock and patent in-

terests. We agree that a summary judgment in favor of the corporation and Frankel on the alleged contracts was appropriate, but are of the opinion that Frey is entitled to a trial on the allegation that Frankel personally was guilty of fraud and deceit.

■ A summary judgment, as authorized by Rule 56, F.R.Civ.P., is a drastic action and available only in cases where there is no material issue of fact, and a formal trial would be fruitless. In Atkinson v. Jory, 10 Cir., 292 F.2d 169, 171, it was said:

"(W)e are unwilling to sustain a summary judgment where the record is unclear to us on both fact and the legal theory forming the basis of the ruling."

In considering a motion for summary judgment, the court is required to examine the record in the light most favorable to the party opposing the motion. Poller v. Columbia Broadcasting, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458. Under Rule 56, "no margin exists for the disposition of factual issues, and it does not serve as a substitute for a trial of the case nor require the parties to dispose of litigation through the use of affidavits." Bushman Const. Co. v. Conner, 10 Cir., 307 F.2d 888, 892. See, also, Morrison Flying Service v. Deming Nat'l Bank, 10 Cir., 340 F.2d 430. The foregoing requirements are to be strictly applied to insure that genuine factual issues will not be determined without the benefit of a trial. Jackson Tool & Die, Inc. v. Smith, 5 Cir., 339 F.2d 88.

■ The parties are substantially in agreement that from the beginning of the negotiations between Frankel and Frey, it was contemplated that Frey would be employed by the reorganized corporation and would have an option to acquire sufficient shares to assure him one-third interest in the controlling stock. These contemplated provisions were submitted to and considered by a committee representing the creditors of the corporation, and were not included in the plan which was submitted to the court for approval. Although Frey, in his first cause of action, alleges that his employment and stock purchase option should have been included in the plan, it was not, and when the order of confirmation became final, the rights of the parties were fixed as of its entry. Collier on Bankruptcy, 14th Ed. Vol. 9, § 9.25; Garfield Trust Co. v. United States, 312 F.2d 751, 160 Ct.Cl. 178, cert. denied 373 U.S. 923, 83 S.Ct. 1524, 10 L.Ed.2d 422; Gerson v. Booth Lumber Co., 9 Cir., 230 F.2d 631. When the plan became effective, Frey's position with the corporation was terminated, and he had no legal right to employment.

■ After Frankel and his associates assumed control of the corporation pursuant to the reorganization, there were continued negotiations with Frey on behalf of the corporation attempting to agree upon the terms of a 5-year contract of employment and a stock purchase option. We do not hold that the reorganized corporation was foreclosed from entering into a written agreement to employ Frey for a period of five years, or to grant him an option to purchase stock. The undisputed evidence, however, is that such agreement was never actually consummated. Furthermore, the alleged 5-year contract for employment was not signed by the corporation, or anyone else. It therefore was clearly within the Kansas Statute of Frauds, K.S.A. 33-106; Manning v. Woods, 187 Kan. 418, 357 P.2d 757; Heine v. First Trust Co. of Wichita, 141 Kan. 370, 41 P.2d 767.

■■ For his second cause of action, Frey alleges that the agreement to assign patent rights [5] and his 148,864 shares of Class B Common Stock, as described in an instrument attached to his affidavit in

---

5. In their answer, defendants disclaim any interest in Patent Applications Nos. 165131 and 165132.

the bankruptcy proceedings, was induced by the false and fraudulent representations of Frankel. Frey contends that the purpose of this agreement was not to surrender his rights, but to protect the corporation and Frankel and associates if his financial circumstances were such as to require him to take personal bankruptcy. The effect of Frey's allegations is that Frankel was fraudulently scheming to remove him from the corporation entirely, and to deprive him of his stock and patent ownership. He should have an opportunity to prove these allegations at a trial.[6] Moreover, should he be able to establish his position as a stockholder in the reorganized corporation, we cannot say from this record that he could not obtain the relief prayed for in Cause Three of the Complaint. It follows that summary judgment should not have been granted on the counterclaim.

 The fourth cause of action cannot be maintained as it would amount to setting aside the judgment entered in the Chapter XI Bankruptcy proceedings.

The judgment in favor of defendants on the second and third causes of action is reversed, and the cause is remanded for further proceedings thereon. In all other respects, the judgment is affirmed.

On Rehearing:

All parties have petitioned for a rehearing. It appears that it is not clearly understood what issues are to be tried upon remand.

 Construing the allegations of the Second Cause of Action of the Complaint broadly, a triable claim against Frankel is presented for fraud, deceit and breach of a fiduciary relationship.

Rehearing denied.

6. In the second cause of action of the complaint, it is alleged:

"I. At approximately the time the defendant Frankel assumed control of Duo-Bed, and while in the position of a fiduciary to both plaintiff and the corporation, and in breach of this fiduciary relationship said defendant, by false representations, fraudulently induced this plaintiff to execute an assignment of 148,864 shares of Class B common stock of Duo-Bed and certain valuable patents and patent rights. The assignment of such stock and patent rights was supposed to be made in favor of the corporation, Duo-Bed, but the defendant Frankel had the assignments prepared in favor of said defendant personally, and now purports to hold title to such property."