Susan KINGSLEY, individually, as surviving spouse of Scott Kingsley, deceased, and as Administratrix of the Estate of Scott Kingsley, deceased, Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.

No. 1:03–CV–0923–WSD.

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 31, 2005.

Arthur W. Leach, Boone & Stone, Atlanta, GA, William Sims Stone, Boone & Stone, Blakely, GA, for Plaintiff.

Jason Kirkham, John A. Chandler, Kristin Beth Wilhelm, Sutherland Asbill & Brennan, Atlanta, GA, for Defendant.

Andrew W. Jones, Lance Alan Cooper, Scott B. Cooper, Cooper Jones & Cooper, Marietta, GA.

### ORDER

DUFFEY, District Judge.

This matter is before the Court on Plaintiff Susan Kingsley's ("Plaintiff") Motion for Partial Summary Judgment [34], Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") Motion for Summary Judgment [38], Plaintiff's Motion for Leave to Exceed the Page Limitation [41], and Plaintiff's Motion to Leave to Amend the Complaint and Answer to Counterclaim [42].

## I. BACKGROUND

### A. Factual Background

On September 4, 1999, an automobile driven by Donna Beam struck a motorcycle driven by Plaintiff's husband, Scott Kingsley. Mr. Kingsley died as a result of the accident. At the time of the accident, Ms. Beam had an automobile insurance policy with State Farm (the "Policy"). The Policy provided coverage for liability up to $25,000.

State Farm received notice of the accident on September 7, 1999, and began investigating Ms. Beam's claim. In early September 1999, Lisa Duggan, the State Farms claims representative assigned to Ms. Beam's claim, requested from Plaintiff's attorneys certain information, including the name of the administrator of Mr. Kingsley's estate, his estate beneficiary and a copy of his probated will. Neither Plaintiff nor her representatives provided State Farm with this information. In late September 1999, Lance Cooper, one of Plaintiff's attorneys, contacted State Farm and requested information concerning the limits of Ms. Beam's Policy. State Farm disclosed this information to Mr. Cooper in early October 1999.

On October 20, 1999, Plaintiff filed suit against Ms. Beam (the "Wrongful Death Action"). Prior to filing suit, neither Plaintiff nor her attorneys made a settlement demand or requested to discuss settlement with State Farm. When State Farm learned of the lawsuit, it retained an attorney to represent Ms. Beam. On November 19, 1999, State Farm offered Plaintiff $25,000, the full amount of coverage available under the Policy.[1] Plaintiff

---

1. Plaintiff argues State Farm's November 19, 1999 settlement offer did not constitute an offer for the full policy limits because, under the Policy, State Farm was required to pay to Plaintiff the $165 in court costs she incurred in filing the Wrongful Death Action against Ms. Beam. Plaintiff cites as support for this argument Section 1 of the Agreement, which states that "[i]n addition to the limits of liabil-

ity, we will pay for an insured any costs ... resulting from such accident, [including] [c]ourt costs of any suit for damages." (Policy at 6–7.) The plain language of the Policy demonstrates that State Farm is obligated to pay court costs incurred by its insured (Ms. Beam), not those incurred by the person su-

rejected State Farm's Policy-limit settlement offer and did not make a counteroffer. Plaintiff testified she rejected State Farm's offer because she had decided to take the case to trial, obtain an excess judgment against Ms. Beam and then sue State Farm for tortiously failing to offer the policy limits before October 20, 1999, the date she selected to file her lawsuit against Ms. Beam. Plaintiff testified she would have rejected any offer made after the filing of the lawsuit.

Plaintiff ultimately prevailed at trial and, in June 2001, obtained a judgment for $4 million dollars against Ms. Beam.[2] State Farm again offered Plaintiff the full $25,000 available under the Policy. Plaintiff rejected State Farm's offer, agreed with Ms. Beam for her to assign any legal claims she might have against State Farm, and filed suit against State Farm for the $4 million dollar judgment she received against Ms. Beam.

### B. Procedural History

Plaintiff filed this case in the State Court of Cobb County, Georgia on March 4, 2003, as Ms. Beam's assignee, asserting a claim for tortious refusal to settle against State Farm. (Compl., attached to Notice of Removal [1] as Exhibit A, ¶¶ 17–19, 21–22.) State Farm removed the case to this Court on April 4, 2003, based on diversity jurisdiction. (Notice of Removal at 2–3.) The parties proceeded through discovery[3] and,

on February 5, 2004, filed their respective motions for summary judgment. (See Pl.'s Mot. for Partial Summ. J. [34]; Def.'s Mot. for Summ. J. [38].) Each party filed briefs in opposition to the other party's motion for summary judgment, as well as reply briefs in support of their motions. (See Pl.'s Resp. to Def.'s Mot. for Summ. J. (inexplicably entitled "Plaintiff's Response Motion [sic] for Summary Judgment Filed by the Hartford Fire Insurance Company") [43]; Def.'s Resp. to Pl.'s Mot. for Partial Summ. J. [44]; Pl.'s Reply in Support of Her Mot. for Partial Summ. J. [45]; and Def.'s Reply in Support of Its Mot. for Summ. J. [46].)[4]

On March 1, 2004, Plaintiff filed her Motion for Leave to Amend the Complaint and Answer to Counterclaim and Memorandum of Law in support thereof ("Mot. to Amend") [42]. State Farm filed its opposition on March 17, 2004[46], and Plaintiff filed her reply brief in support of her motion on March 30, 2004[48].

## II. DISCUSSION

### A. Plaintiff's Motion to Amend

Plaintiff seeks to amend her Complaint and her Answer to State Farm's counterclaim to "address certain alleged pleading deficiencies in the original complaint that [State Farm] raised for the first time in its motion for summary judgment." (Mot. to Amend at 1.) State Farm opposes Plain-

---

ing its insured. Accordingly, this argument is rejected.

2. $1.5 million of the award represented wrongful death damages awarded to Plaintiff as the surviving spouse. The remaining $2.5 million was awarded to Plaintiff as the administrator of Mr. Kingsley's estate for his pain and suffering.

3. Discovery originally was set to expire on September 4, 2003. The parties requested, and the Court approved, an extension of discovery until January 16, 2004 [14, 15].

4. Prior to filing her response to Defendant's motion for summary judgment, Plaintiff requested leave of the Court to exceed the page limitation set out in Local Rule 7.1(D). State Farm did not oppose the motion. See L.R. 7.1(B), N.D.Ga. The Court having reviewed Plaintiff's request, and for good cause shown, Plaintiff's Motion for Leave to Exceed the Page Limitation is GRANTED *NUNC PRO TUNC*.

tiff's motion, requesting the Court to deny it on the grounds that (1) Plaintiff unduly delayed in moving to amend; (2) the amendment would result in substantial prejudice to State Farm; and (3) the amendment would be futile. (Resp. to Mot. to Amend at 2–3.)

■ Rule 15 of the Federal Rules of Civil Procedure provides that, once a responsive pleading has been served, a party may amend its complaint only by leave of court or by written consent of the adverse party. Fed.R.Civ.P. 15(a). Although Rule 15 requires that leave to amend "shall be freely given when justice so requires," Fed.R.Civ.P. 15(a), the Eleventh Circuit has instructed that "a motion to amend may be denied on numerous grounds such as undue delay, undue prejudice to the defendants, and futility of the amendment." *Maynard v. Bd. of Regents of Div. of Univs.*, 342 F.3d 1281, 1287 (11th Cir. 2003) (holding that district court did not abuse its discretion in denying a motion to amend filed on last day of the discovery because granting the motion "would have produced more attempts at discovery, delayed disposition of the case, ... likely prejudiced [the adverse party], [and] ... there seems to be no good reason why [the movant] could not have made the motion earlier."). In this case, Plaintiff's request for leave to amend must be denied because it is untimely, would prejudice State Farm and would be futile.

Plaintiff unduly delayed in moving to amend her Complaint and her Answer to State Farm's Counterclaim. The Wrongful Death Action and the conduct on which Plaintiff's claim is based concluded in June 2001. The Complaint in this case was filed on March 4, 2003, discovery ended in January 2004, and the parties filed their respective motions for summary judgment in February 2004. Plaintiff did not file her motion to amend until March 1, 2004, more than two and one-half years after the

events at issue in the case, almost a year after the filing of the Complaint, nearly two months after the close of discovery, and one month after the filing of dispositive motions. In support of her request, Plaintiff relies only on the fact that the alleged deficiencies in her Complaint were raised "for the first time" in State Farm's motion for summary judgment. In essence, Plaintiff argues it was State Farm's responsibility to notify her of these alleged deficiencies and that her delay in seeking leave to amend was the result of State Farm's failure to do so prior to moving for summary judgment. Plaintiff's argument does not constitute grounds for permitting her to amend her Complaint at this late stage.

The facts on which Plaintiff's claims are based have not changed since the Complaint was filed almost three (3) years ago. The deadline for amendments set forth in the parties' Joint Preliminary Report and Discovery Plan [9] · (the "Report") was June 4, 2003. (Report ¶ 6.) Plaintiff, however, did not seek leave to amend until March 4, 2004, nine months after the deadline.

That the June 4, 2003 deadline imposed in the Report does not preclude a party from moving to amend pursuant to Rule 15, as noted by Plaintiff, ignores that this deadline aids the parties and the Court in defining the litigation at an early stage by, among other things, providing the parties with a date certain by which to review their pleadings and conform them to include the facts and claims Plaintiff intends to allege and against which State Farm must defend in this case. This function of the deadline is undermined if parties, such as Plaintiff, ignore the deadline and wait until after the close of discovery and the filing of dispositive motions to seek leave. This is especially true where, as here, the amendments are not based on some unan-

ticipated development of facts during discovery or the recognition of a new legal theory disclosed in developing case law, but on facts developed well before discovery closed and dispositive motions were filed. The Court of Appeals for the Eleventh Circuit has upheld district court denials of leave to amend where a party waits to seek leave until after a court-imposed deadline for amendments, including where the amendment was sought to address pleading shortcomings identified by an opposing party in a motion for summary judgment. *See, e.g., Lowe's Home Ctrs., Inc. v. Olin Corp.,* 313 F.3d 1307, 1314–15 (11th Cir.2002) (affirming district court's denial of motion to amend filed well after the deadline for amendments set out in the court's scheduling orders and two months after the opposing party's motion for summary judgment, holding that "in order to ensure the orderly administration of justice, [the district court] has the authority and responsibility to set and enforce reasonable deadlines" and that "[i]t is not an abuse of discretion for a district court to deny a motion for leave to amend a complaint when such motion is designed to avoid an impending adverse summary judgment."); *Carruthers v. BSA Adver., Inc.,* 357 F.3d 1213, 1217–18 (11th Cir. 2004) (affirming district court's denial of motion to amend filed six months after court's deadline for amendments to pleadings and two months after the close of discovery). Plaintiff here has not shown any plausible reason for waiting until well after the deadline for amendments, the close of discovery and the filing of dispositive motions to request leave to amend. That State Farm identified deficiencies Plaintiff did not is inadequate reason to permit an untimely amendment.

Permitting the amendment also would result in substantial prejudice to State Farm. Plaintiff seeks leave to add allegations concerning, among other things, alleged negligence on the part of State Farm and its individual employees in obtaining information regarding Mr. Kingsley's estate (Proposed Am. Compl., attached to Mot. to Amend as Exhibit 1, ¶ 40), and in investigating whether Ms. Beam had personal assets with which to settle or satisfy the claims against her in the Wrongful Death Action (Proposed Am. Compl. ¶ 30). Plaintiff represents to the Court in her reply brief that these and other similar allegations are not intended to assert new claims, but rather to elaborate on her existing claim for tortious refusal to settle. (Reply in Support of Mot. to Amend at 4–5.) The Court is not persuaded by this characterization. The addition of these types of allegations would require State Farm, already having filed its motion for summary judgment, to engage in additional discovery to investigate Plaintiff's factual bases for these assertions and to supplement its motion to defend against them. Requiring State Farm to conduct additional discovery at this stage of the litigation constitutes substantial prejudice and would unduly delay the resolution of this action.

Finally, while each of the reasons discussed independently warrants denial of Plaintiff's Motion to Amend, the Court also finds the proposed amendment would be futile. Plaintiff acknowledges in her reply brief that the Court's determination of Defendant's Motion for Summary Judgment is affected by the proposed amendment only if the Court relies on alleged defects in Plaintiff's pleadings in reaching its decision. (Reply in Support of Mot. to Amend at 5–6.) The Court has not based its determination of Defendant's motion on any alleged pleading deficiency in Plaintiff's Complaint or in her Answer to Defendant's counterclaim. Since the allegations sought to be added by Plaintiff, by her own admission, would not alter the result reached by the Court, the amendment would be futile.

The Court having found that Plaintiff unduly delayed in moving to amend her Complaint, that permitting the amendment would unfairly prejudice State Farm and that the amendment would be futile, Plaintiff's proposed amendment will not be allowed.

## B. The Parties' Motions for Summary Judgment

### 1. *Summary Judgment Standard*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir.1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir.1999). The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." *Id.* at 1282.

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor. *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir.1990). "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." *Graham*, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." *Herzog*, 193 F.3d at 1246. But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In this case, both parties have moved for summary judgment. The Court views the evidence in the light most favorable to Plaintiff in deciding State Farm's Motion for Summary Judgment, and in the light most favorable to State Farm in evaluating Plaintiff's Motion for Partial Summary Judgment.

### 2. *State Farm's Motion for Summary Judgment*

■ "An [insurer] may be liable for the excess judgment entered against its insured based on the insurer's bad faith or negligent refusal to settle a personal claim within the policy limits." *Cotton States Mut. Ins. Co. v. Brightman*, 276 Ga. 683, 580 S.E.2d 519, 521 (2003). "Judged by the standard of the ordinarily prudent insurer, the insurer is negligent in failing to settle if the ordinarily prudent insurer would consider choosing to try the case [as creating] an unreasonable risk." *Id.* In this case, Plaintiff alleges State Farm negligently or in bad faith failed to settle the Wrongful Death Action. State Farm asserts two primary arguments in support of its motion for summary judgment.[5] First,

---

5. State Farm includes a third argument in support of summary judgment based on Plaintiff's failure to provide, before the complaint in the Wrongful Death Action was filed, certain information requested by State Farm in connection with its investigation of its claim. This ground is considered in the Court's discussion of State Farm's second ground for its motion.

State Farm argues it cannot be held liable for tortious refusal to settle because its duty to settle arises only after an offer to settle the underlying action within the policy limits, and Plaintiff did not make such an offer. (Def.'s Mot. for Summ. J. at 7–16.) Second, State Farm argues that, even if a settlement offer from Plaintiff is not required, Plaintiff's claim fails because she cannot show State Farm knew, or reasonably should have known, that the case could be settled within the Policy limits before Plaintiff's Complaint was filed. (*Id.* at 16–18.)

a. *Requirement of an Offer to Settle Within the Policy Limits From Plaintiff*

State Farm's argument that an insurer may not be held liable for tortious refusal to settle in the absence of a settlement demand from the plaintiff is not supported by Georgia law. In *Delancy v. St. Paul Fire & Marine Ins. Co.*, 947 F.2d 1536 (11th Cir.1991), the Court of Appeals for the Eleventh Circuit addressed this precise issue and, after an exhaustive review of Georgia law, concluded that "Georgia law does not clearly require the insured [or her assignee] to show that the insurer refused an offer within the policy limits to establish liability for tortious failure to settle, but it does not foreclose the argument that such an offer is required before the insured may recover." *Delancy*, 947 F.2d at 1550. The court found that, "[a]t a minimum, however, Georgia law mandates that the insured show that settlement was possible—the case could have been settled within the policy limits—and that the insurer knew, or reasonably should have known, of this fact." *Id.* at 1550 (internal citations omitted). The court applied this formulation in granting summary judgment for the insurer. *Id.* at 1558–59.

State Farm acknowledges the Court of Appeals' holding in *Delancy,* but argues the Georgia Supreme Court's decision in

*Cotton States Mutual Insurance Co. v. Brightman*, 276 Ga. 683, 580 S.E.2d 519 (2003), resolved any ambiguity on this issue. (Mot. for Summ. J. at 11 n. 1.) *Brightman* involved a lawsuit arising out of an automobile accident. *Id.* at 520. The plaintiff sued both the owner of the automobile ("Martin") and its driver ("Cumbo"). *Id.* Martin was insured by Cotton States Mutual Insurance Company ("Cotton States") and Cumbo was insured by State Farm. *Id.* The plaintiff in the underlying lawsuit offered to settle the case for Cotton States' policy limits, provided State Farm also tendered its policy limits within ten (10) days of the settlement offer. *Id.* Cotton States refused to tender its policy limits. The plaintiff obtained a judgment against Martin and Cumbo in excess of their respective policy limits and Martin assigned to the plaintiff his claim for tortious refusal to settle against Cotton States. The plaintiff then sued Cotton States. *Id.*

At trial, Cotton States moved for a directed verdict on the ground that Georgia law did not require it to accept an offer to settle within the policy limits that was contingent upon State Farm's tendering of its policy limits, an event beyond Cotton States' control. The trial court denied Cotton States' motion, and the Georgia Court of Appeals affirmed this decision. The Georgia Supreme Court also upheld the trial court's denial of the motion, holding that "[the plaintiff's] inclusion of a condition in the offer involving State Farm is insufficient for us to resolve, as a matter of law, that Cotton States acted reasonably and like the ordinarily prudent insurer in declining to tender its policy limits." *Id.* at 522.

State Farm points out, however, the Georgia Supreme Court's disapproval of the Georgia Court of Appeals "placing an affirmative duty on [insurers] to engage in

negotiations concerning a settlement demand that is in excess of the insurance policy's limits," *id.*, as well as the court's statement that "the issue of an insurer's bad faith depends on whether the insurance company acted reasonably *in responding to a settlement offer,*" *id.* (emphasis added). This disapproval, State Farm argues, resolves the ambiguity recognized by the Court of Appeals for the Eleventh Circuit in *Delancy*, by impliedly clarifying that an offer to settle *is* a predicate to a tortious refusal to settle claim. This Court disagrees with State Farm's conclusion. The Georgia Supreme Court in *Brightman* disapproved only of the inflexible rule that there always is an affirmative duty on the part of the insurer to (i) respond to a settlement offer outside the policy limits, and (ii) make a counteroffer to every settlement demand it receives. The opinion does not resolve the ambiguity under Georgia law regarding what role an offer of settlement within the policy limits from the plaintiff plays in determining whether an insurer was negligent in failing to offer the limits of a policy to resolve a claim against an insured.

At least one recent Georgia Court of Appeals decision indicates the *Delancy* court's assessment of Georgia law still is correct. In *Thomas v. Atlanta Casualty Co.*, 253 Ga.App. 199, 558 S.E.2d 432, 439 (2001), *cert. denied* (Apr. 29, 2002), an insured brought a claim against the insurer for tortious refusal to settle based on the insurer's failure to negotiate settlement after a default judgment was entered against the insured. The trial court granted summary judgment for the insurer, but the Georgia Court of Appeals reversed, finding genuine issues of material fact with respect to whether the insurer was negligent in failing to offer the limits of the policy to settle the claim. *Id.* at 439–440. The court stated: "The failure either to settle within policy limits or *to make an offer of settlement* creates an issue of bad

faith of the insurer, because the issue arises whether the insurer places its financial interest superior to the interests of its insured who is placed at great risk for an excess judgment." *Id.* at 439 (emphasis added). The court in its opinion made no reference to any offer from the plaintiff in the underlying lawsuit at or within the policy limits, but did note that the insured's personal attorney made a demand on the insurer to settle the case within the policy limits. *Id.* at 438. In holding that, under extreme circumstances such as those presented in the *Thomas* case, an insurer may be liable for tortious refusal to settle for failing to initiate settlement negotiations, this decision supports the position urged by Plaintiff. However, it still is unsettled whether a plaintiff must make a policy-limits demand for an insurer to be held liable for a tortious refusal to settle.

Having determined Georgia law still is unclear with respect to whether an offer of settlement within the policy limits is required to establish liability for tortious refusal to settle, the Court, in accordance with the Court of Appeals' approach in *Delancy*, assumes for the purposes of the summary judgment motions before it that to find State Farm liable, Plaintiff does not have to show she made a settlement demand or offered to settle for the limits of the Policy under which Ms. Beam was insured.

b. *Possibility of Settlement Within the Policy Limits and State Farm's Knowledge of This Possibility*

State Farm next contends it is entitled to summary judgment because, even if a policy-limits offer from Plaintiff is not required, Plaintiff cannot show State Farm knew or reasonably should have known settlement within the Policy limits was possible and failed to take sufficient steps to obtain such a settlement. *Delancy*, 947

F.2d at 1550. The undisputed evidence is that, in the weeks following the accident, State Farm investigated the claim submitted by Ms. Beam and requested information and documents from Plaintiff's family and/or legal representatives for the purpose of evaluating liability for the accident, the extent of damages and the proper party with whom to negotiate settlement. It also is undisputed that, after completing its investigation and obtaining the information it requested—ultimately from Plaintiff's complaint in the Wrongful Death Action rather than from Plaintiff or her attorneys—State Farm made an unconditional Policy-limits offer to Plaintiff, which Plaintiff rejected. There is no evidence Plaintiff initiated settlement discussions at any later point in time or that State Farm received information from which it knew or should have known Plaintiff's position concerning settlement had changed and that settlement within the Policy limits now was possible. To the contrary, Plaintiff testified she would not have accepted any offer made after October 20, 1999, and this is confirmed by Plaintiff's rejection of a second Policy-limits settlement offer made by State Farm after Plaintiff obtained a judgment against Ms. Beam.

Plaintiff's theory of liability in her case against State Farm is summed up in this way: If State Farm had volunteered the limits of Ms. Beam's Policy before Plaintiff filed suit "State Farm would have fulfilled its duty and done all it could do to protect its insured from an excess liability judgment, and it would have created a 'safe harbor' for itself from any tort action." (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 28.) Plaintiff's position necessarily is that State Farm was required to make an unconditional Policy-limits settlement offer before Plaintiff's secret filing deadline of October 20, 1999. Failure to make such an offer, according to Plaintiff's theory, constitutes a tortious refusal to settle, exposing State Farm to the full amount of any excess judgment awarded against Ms. Beam. In stating this position, Plaintiff, interestingly, relies on *Brightman.* (*Id.*) The Court agrees *Brightman* is instructive and believes a fuller discussion of that case is necessary to understand its holding and reasoning.

As discussed above, *Brightman* involved a 1992 automobile accident in which the plaintiff was injured when a car owned by Martin and driven by Cumbo struck him. Plaintiff sued both Martin and Cumbo, who were insured by Cotton States and State Farm, respectively. In January 1995, the plaintiff's attorney offered Cotton States a chance to settle. He informed Cotton States the plaintiff would accept the limits of Martin's policy with Cotton States, contingent upon State Farm agreeing to pay the limits of Cumbo's policy. The plaintiff gave Cotton States ten (10) days to accept the offer. Thus, Cotton States knew not only the terms of the demand, but also the exact date beyond which its insured was at risk for an adverse judgment exceeding the policy limits if Cotton States did not accept the plaintiff's offer. Cotton States chose not to respond, a judgment was entered against it insured for well beyond the policy limits and the plaintiff, as Martin's assignee, sued Cotton States for the full amount of the judgment based on its refusal to settle within the policy limits.

In beginning its analysis, the Georgia Supreme Court set out the standards against which it was required to evaluate Cotton State's conduct. It stated: "An insurance company may be liable for an excess judgment entered against its insured based on the insured's bad faith or negligent refusal to settle a personal claim within the policy limits." *Id.* at 684, 580 S.E.2d 519. It next stated:

Judged by the standard of the ordinary prudent insurer, the insurer is negligent

in failing to settle if the ordinarily prudent insurer would consider choosing to try the case [as creating] an unreasonable risk. The rationale is that the interests of the insurer and insured diverge when a plaintiff offers to settle a claim for the limits of the insurance policy. The insured is interested in protecting itself against an excess judgment; the insurer has less incentive to settle because litigation may result in verdict below the policy limits or a defense verdict.

*Id.* at 685, 580 S.E.2d 519.

Key to the court's ultimate conclusion in *Brightman* were these holdings: (i) Cotton States had an opportunity to settle the case for the policy limits during the ten-day window of the plaintiff's offer but failed to respond within the time allowed; and (ii) if Cotton States had tendered the policy limits, it would have given equal consideration to its insured's financial considerations and its own and thus insulated itself from liability for an excess verdict while also protecting the interests of its shareholders. *Id.* at 522. The Court concluded that because Cotton States refused to tender its policy limits in response to the plaintiff's offer, it was up to the jury to determine whether Cotton States had an adequate opportunity to settle and whether its failure to tender the policy limits constituted a negligent or bad faith refusal to settle.

This case, by contrast, does not involve a settlement offer from Plaintiff, contingent or otherwise; instead, it involves a secret deadline for State Farm to make an unsolicited, unilateral offer of the Policy limits. Plaintiff argues State Farm's failure to tender the Policy limits prior to her secret deadline forecloses the possibility of settlement and subjects State Farm to liability for the excess judgment ultimately entered in the Wrongful Death Action. This argu-

ment is unprecedented under Georgia law, is not consistent with the policies considered by the Georgia courts that have addressed these issues and otherwise does not make practical sense.

A number of Georgia cases have considered claims that an insurer was negligent or acted in bad faith in rejecting a policy-limits offer from the plaintiff in the underlying action or by failing to offer the limits of a policy to settle the case against its insured. *See, e.g., Southern Gen. Ins. Co. v. Holt,* 262 Ga. 267, 416 S.E.2d 274 (1992); *Driskell v. Empire Fire & Marine Ins. Co.,* 249 Ga.App. 56, 547 S.E.2d 360 (2001); *Cotton States Mut. Ins. Co. v. Fields,* 106 Ga.App. 740, 128 S.E.2d 358 (1962). Fundamental to the decisions in these cases was that the insurer at some point knew there was an opportunity to settle within the policy limits, because it received a policy-limits settlement offer from the plaintiff, or at the very least knew the opportunity to settle within the policy limits would close because of the passage of a settlement deadline communicated by the plaintiff or the entry of a final judgment in the underlying action. *See Southern Gen.,* 416 S.E.2d at 276 (holding insurer may be liable for tortious refusal to settle where plaintiff in the underlying lawsuit offered to settle for the policy limits and insurer failed to respond within ten-day period required under the terms of the offer); *Driskell,* 547 S.E.2d at 366 ("[W]here a person injured by the insured offers to settle for a sum within the policy limits, and the insurer refuses the offer of settlement, the insurer may be held liable to the insured to pay the verdict rendered against the insured even though the verdict exceeds the policy limit of liability. The reason for this rule is that the insurer 'may not gamble' with the funds of its insured by refusing to settle within the policy limits.") (quoting *McCall v. Allstate Ins. Co.,* 251 Ga. 869, 310 S.E.2d 513 (1984)); *Fields,* 128 S.E.2d at

359–60 (affirming dismissal of insured's tortious refusal to settle claim in absence of settlement offer from victim because "the plaintiff insured is seeking in this case to hold the defendant insurer liable for the excess judgment on the mere supposition that if the defendant insurer had made an offer of compromise, then possibly the suit against the insured could have been settled within the policy limits.").

■ Thus, a careful reading of the law in Georgia discloses that an insurer will be exposed to a judgment in excess of its policy limits only where there is some certainty regarding the settlement posture of the parties in the underlying lawsuit-i.e., where the insured's liability is clear, the damages are great *and* the insurer is on notice that it has an opportunity to settle the case, usually because a settlement demand in the amount of the policy limits or greater is received from the plaintiff. There must be a triggering event—something that puts the insurer on notice that it must respond or risk liability for an excess judgment. Put another way, to find liability for tortious refusal to settle there must be something the insurer was required to "refuse." [6]

Only when the opportunity to settle is clear—when there is something to refuse—do the "interests of the insurer and the insured diverge" and the insurer must decide between them. If the insurer's interests win out, then exposure for an excess judgment arises. The *Delancy* court summarized this principle this way:

At a minimum ... Georgia law mandates that the insured show that settlement was possible—the case could have been settled within the policy limits, ... and that the insurer knew, or reasonably should have known, of this fact. The best evidence that the case could have settled, of course, is the existence of an offer within the policy limits; *liability in the absence of such an offer will be rare.* We assume, however, that if the insured alleges facts showing that the insure knew, or reasonably should have known, that the case could have been settled within the policy limits—i.e., if the insurer had offered the policy limits, the injured party would have accepted—and the insurer failed to effect a settlement within a reasonable time, the insured states a cause of action for tortious failure to settle.

*Delancy,* 947 F.2d at 1550–51 (emphasis added).

■ The question here is whether, viewing the facts in the light most favorable to Plaintiff, there was a triggering event such that State Farm had an adequate opportunity to settle prior to Plaintiff's filing her Complaint—that is, that State Farm knew or reasonably should have known that the case could have been settled within the Policy limits. Plaintiff does not contend in this case that she made a settlement offer or otherwise communicated in any way to State Farm the possibility of settlement prior to the expiration of her secret deadline.[7] She does not contend she expressly

---

6. "Refusal" is "the act of refusing or denying." *Merriam Webster's Collegiate Dictionary,* 10th ed. (1996). "Refuse" is defined as being "unwilling to accept." *Id.*

7. Plaintiff argues Ms. Beam's personal financial circumstances were such that State Farm should have known Plaintiff would have no choice but to accept such an offer. Plaintiff does not cite, nor is the Court aware of, any authority for the proposition that the lack of

personal assets on the part of the insured constitutes adequate notice that settlement within the policy limits is possible. In addition, Plaintiff's insistence that she would have had "no choice" but to accept a Policy-limits offer is inexplicable in light of her rejection of such an offer on November 19, 1999, since there is no indication Ms. Beam's financial circumstances changed between the weeks preceding October 20, 1999, and November

or impliedly offered anything for State Farm to refuse. Plaintiff kept secret the information that might have led State Farm to conclude the case could be settled within the Policy limits, and in doing so prohibited State Farm from performing the analysis the law anticipates will be conducted. State Farm, even in the absence of any indication Plaintiff would settle this claim, ultimately tendered the limits of the Policy. That tender was rejected by Plaintiff based on the undisclosed deadline she unilaterally imposed. Because the filing of her Complaint was a deadline imposed by Plaintiff without any notice to State Farm, and which Plaintiff consciously chose not to communicate to State Farm, the Court concludes that, as a matter of law, there was no triggering event and State Farm did not know, nor should it reasonably have known, that settlement within the Policy limits was possible. Accordingly, summary judgment on Plaintiff's claim for tortious refusal to settle is warranted.[8]

Plaintiff's litigating position, if accepted, would lead to the unreasonable practical result of foreclosing the possibility of summary judgment in all cases like this one. Taking Plaintiff's rationale to its logical conclusion, a plaintiff always could set a secret deadline for the tendering of the policy limits, whether it be the one month anniversary of the accident, the date she arbitrarily selects to file her complaint or the next full moon. If the insurer fails to tender the policy limits before this secret

deadline, the plaintiff can refuse to settle, secure a judgment and then seek to collect from the insurer damages in an amount exponentially greater than the coverage provided under the policy. There would be few cases where injury to the victim is severe and coverage is limited in which a plaintiff could not plausibly argue the insurer should have concluded its insured's exposure was greater than the policy limits and the insurer's failure to tender the limits prior to the secret deadline creates a genuine issue of material fact precluding summary judgment on the plaintiff's claim for tortious refusal to settle.

▪ It is unreasonable to assume the Georgia courts would encourage this result. In fact, the Georgia Supreme Court in *Southern General* expressly rejected a rule that an insurer's failure to respond to a time-limited settlement offer constitutes bad faith *per se,* since adopting such "a rule of law that would mean that a plaintiff's attorney … could 'set up' an insurer for an excess judgement merely by offering to settle within the policy limits and by imposing an unreasonably short time within which the offer would remain open." *Southern Gen.,* 416 S.E.2d at 276. Adopting the position advocated by Plaintiff would create an even greater risk of "set up." If Georgia courts will not allow the imposition of an unreasonably short deadline within which to respond to a settlement offer, they certainly would not allow

19, 1999, the date on which State Farm made its Policy-limits offer.

8. State Farm also argues it could not, consistent with its obligation to Ms. Beam, settle the Wrongful Death Action prior to October 20, 1999, because Plaintiff and her representatives had not provided State Farm with certain information regarding the administration of Mr. Kingsley's estate. The Court having granted summary judgment on Plaintiff's tortious refusal to settle claim because Plaintiff

fails to offer evidence State Farm knew or should have known settlement was possible and failed to obtain a settlement within a reasonable time, it is not necessary to address this argument. Nevertheless, the Court notes Plaintiff's failure to provide this information prior to filing the Wrongful Death Action further undermines her argument State Farm knew or reasonably should have known settlement within the policy limits was possible and failed to take sufficient steps to obtain such a settlement.

the imposition of a secret and arbitrary one.

### c. *State Farm's Counterclaim*

State Farm also asserts a counterclaim against Plaintiff, seeking a declaratory judgment that it (a) fulfilled any obligation it had to offer the policy limits by doing so on November 19, 1999; (b) acted in good faith in handling the claims asserted against Ms. Beam; and (c) did not breach any duty that it may have had to Ms. Beam. (Answer & Counterclaim for Declaratory Judgment ¶ 28.) State Farm in its Motion for Summary Judgment requests the Court to enter judgment in its favor on its counterclaim as well. (Def.'s Mot. for Summ. J. at 21–22.)

■ "To proceed with a Declaratory Judgment Act claim, there must be an actual issue in controversy as opposed to one that is hypothetical or contrived, the case must not be the medium for securing an advisory opinion, the matter must be definite and concrete, the parties' positions must be defined and adversarial and the issues must be susceptible to judicial determination." *GE Life & Annuity Assur. Co. v. Combs*, 191 F.Supp.2d 1364 (M.D.Ga.2002). Here, the only discernible controversy between the parties is whether State Farm's failure to make an offer of settlement for the policy limits on or before October 20, 1999, constitutes a tortious refusal to settle. State Farm's counterclaim, however, seeks a declaratory judgment concerning issues that extend beyond the scope of the controversy concerning its alleged tortious refusal to settle. Among other things, State Farm seeks a declaration concerning all duties that may have been owed to Ms. Beam, who is not a party to this litigation.

The Court has granted summary judgment on Plaintiff's claim for tortious refusal to settle. State Farm has not presented evidence of any other actual issues in controversy. Accordingly, summary judgment on State Farm's counterclaim is improper.

### 3. *Plaintiff's Motion for Partial Summary Judgment*

Plaintiff filed her Motion for Partial Summary Judgment on February 5, 2004. Rather than seek summary judgment on her only claim—tortious refusal to settle—Plaintiff requests the Court to enter judgment in her favor on twenty-three "issues," some factual and some legal, in anticipation of trial. Examples include:

- "O.C.G.A. § 33–4–6 has no application to this case involving claims for negligent failure to settle or attempt to settle claims involving clear liability and damages clearly in excess of insurance limits against State Farm's insured." (Mot. for Summ. J. at 2);

- "State Farm never attempted settlement of Susan Kingsley's claims against its insured, Donna Beam, before suit was filed on October 20, 1999, in *Kingsley v. Beam*, CA No. 99–SC–1135, in the Superior Court of Cherokee County, Georgia." (*Id.* at 5); and

- "The Plaintiff is the assignee of all Donna Beam's rights and claims against State Farm, and as such has standing to bring this action." (*Id.* at 6.)

Plaintiff's request is not a proper use of Rule 56 of the Federal Rules of Civil Procedure. "It is well established that the district court's function, in a summary judgment proceeding, is not to resolve factual issues but to determine whether there exists a genuine issue of material fact." *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1299 (11th Cir.1983) (internal punctuation and citations omitted). "[T]he summary judgment procedure does not serve as a substitute for a trial of the case." *Id.* (quoting *Frey*

*v. Frankel,* 361 F.2d 437, 442 (10th Cir. 1966)). Even if the Court were to construe Plaintiff's motion as seeking summary judgment on its claim for tortious refusal to settle, rather than these discrete issues of fact and law, Plaintiff's motion must be denied for the same reasons which warrant the entry of summary judgment in favor of State Farm in its motion; namely, that there is no evidence State Farm knew or reasonably should have known settlement within the Policy limits was possible and failed to take sufficient steps to obtain a settlement within a reasonable time. *See* Section II(B)(2), *supra.* Accordingly, summary judgment in favor of Plaintiff is inappropriate.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to Exceed Page Limitation is **GRANTED** *NUNC PRO TUNC.*

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend the Complaint and Answer to Counterclaim is **DENIED.**

**IT IS FURTHER ORDERED** that State Farm's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART.** State Farm's motion is **GRANTED** with respect to Plaintiff's claim for tortious refusal to settle. State Farm's motion is **DENIED** with respect to State Farm's counterclaim for declaratory judgment. The Clerk of Court is **DIRECTED** to enter judgment in favor of State Farm against Plaintiff on Plaintiff's claim for tortious refusal to settle.

**IT IS FURTHER ORDERED** that State Farm show cause within ten (10) days of this Order why its counterclaim for a declaratory judgment should not be dismissed for lack of jurisdiction.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment is **DENIED.**